**UNITED STATES of America, Plaintiff,**

**v.**

**Richard B. HUNT et al., Defendants.**

**Civ. No. 5908.**

United States District Court,
D. Wyoming.

March 28, 1974.

**1080**

Richard V. Thomas, U. S. Atty., and Tosh Suyematsu, Asst. U. S. Atty., Cheyenne, Wyo., for plaintiff.

H. Clandillon Phibbs II, Jackson, Wyo., and E. J. Herschler, Kemmerer, Wyo., for defendants.

*Judge's Memorandum*

KERR, District Judge.

This is an action to foreclose a federal tax lien pursuant to 26 U.S.C. §§ 7401, 7403. A single question is involved, viz: Does a federal tax lien take priority over a prior unrecorded judgment lien when the government had actual knowledge of the rendition of the judgment?

The facts are not in dispute and by stipulation the parties have agreed as follows: In May 1968, the government received the federal income tax return of David N. and Betty Burns (taxpayers) for the year 1967. On December 11, 1969, defendant Richard B. Hunt (Hunt) filed an action against David N. Burns in the District Court for Teton County, Wyoming, for recovery of monies due on two promissory notes. In June 1970, Hunt obtained and served various writs of garnishment and attachment in connection with the action against the deceased taxpayer. Among the garnishees, one answered and deposited in the registry of the District Court for Teton County, pursuant to Wyoming law, Wyo.Stat. § 1–253 (1957), the amount of $16,086.94. On June 27, 1971, taxpayer David N. Burns died, and probate proceedings were commenced. On August 6, 1971, plaintiff properly served a notice of assessment on the estate of the deceased taxpayer and on his widow. On April 11, 1972, the First National Bank of Kemmerer was ap-pointed Administrator and on April 18, 1972, Hunt filed a creditor's claim with Administrator and the Court. On August 9, 1972, the District Court for Teton County heard and decided the case between Hunt and taxpayer, rendering judgment in favor of Hunt on the promissory notes, reserving only the computation of attorney's fees and interest. On August 14, 1972, the government received and had actual knowledge of the judgment rendered by the District Court in favor of Hunt on August 9, 1972. On September 13, 1972, the government filed federal tax levy notices with the Clerk of the District Court for Teton County. Finally, on October 10, 1972, judgment was formally entered in the suit by Hunt against taxpayer, based on the decision rendered on August 9, 1972.

Under 26 U.S.C. § 6321, a lien shall arise and attach to all property of any person who has failed or refused to pay any taxes due. Jurisdiction is vested in this Court for the enforcement of Internal Revenue laws. 26 U.S.C. § 7402. The lien "imposed by section 6321 shall arise at the time the assessment is made . . . ". 26 U.S.C. § 6322. Under the stipulated facts, the lien in the present matter arose on August 6, 1971, when assessment was made. The lien imposed by Section 6321 shall not be valid as against any judgment lien creditor until notice thereof has been filed in an office within the State designated by the laws of such State where the property subject to the lien herein, the amount deposited into the registry, is situated. 26 U.S.C. § 6323(f). The notice perfecting the assessment was filed on September 13, 1972, after the judgment had been rendered but before it had been formally entered. In bringing this action, all parties claiming an interest have been made parties hereto. 26 U.S.C. § 7403(b). The issue to be settled is whether the federal tax lien notice, filed in the state district court, gives the government priority to the garnisheed funds over Hunt, a judgment creditor, where judgment had been rendered but not formally entered, at the time the tax

lien is filed. It is apparent that this matter would not have arisen had judgment been entered forthwith after the rendition of the judgment.

■■ "The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question". United States v. Security Trust & Savings Bank, 340 U.S. 47, 49, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950); United States v. Waddill Co., 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 (1945). Under Wyoming law, a lien of judgment shall attach to "[G]oods and chattels of the debtor . . . from the time they are seized in execution". Wyo.Stat. § 1–358 (1957). In the present case, the monies were "seized in execution" prior to judgment, i. e., on January 29, 1971, when the garnishee paid the amount of $16,086.94 into the Court. It could properly be said that such monies were thereafter in the custody of the Court, returnable if no judgments were obtained by the creditor, Hunt.

■■ "Although a state court's classification of a lien as specific and perfected is entitled to weight, it is subject to reexamination . . .". Security Trust & Savings Bank, above, 340 U.S. at 49, 71 S.Ct. at 113; Illinois v. Campbell, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348 (1946). The monies were paid into the Court pursuant to writs of attachment and garnishment served in June 1970. See Wyo.Stat. § 1–226 et seq. (1957). These were issued in conjunction with the suit filed by Hunt on monies due on two promissory notes. In State Bank v. Frantz, 33 Wyo. 326, 239 P. 531 (1925), the Supreme Court of Wyoming held that a writ of attachment created a lien as of the date of service. See Great Falls Transfer & Storage Co. v. Pan Am. Petroleum Corp., 353 F.2d 348 (10th Cir. 1965). The Wyoming Supreme Court decision has never been reversed and its conclusion does not appear to be clearly erroneous. As such it is entitled to substantial weight. A garnishment is virtually a process of attachment and under Wyoming law, a garnishee is bound from the time of service. Wyo.Stat. § 1–243 (1957). It gives the creditor a paramount right, although not necessarily title, to such property as a security for his demand. See United States v. Liverpool & Globe Ins. Co., 209 F.2d 684 (5th Cir. 1953). There is no dispute that Hunt properly validated his writ of garnishment.

■ It has been stated that "Numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded. Thus the attachment lien is contingent or inchoate". Security Trust & Savings Bank, above, 340 U.S. at 50, 71 S.Ct. at 113; Illinois v. Campbell, above. "Liens [become] perfected [when] there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established". United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520, 526 (1954). Here, the lienor was clearly established, the property subject to the lien had been established, in fact, had been seized and placed in the court's custody; and the amount of the lien, excluding fees and interest, had been established by the decision rendered by the Court on August 9, 1972. This was over one month prior to the date when plaintiff filed its notices of tax liens. A federal tax lien cannot be defeated by a prior state-created lien unless the latter is also choate. See Spokane County v. United States, 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621 (1928). In this respect, United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1954), cited by plaintiff as holding that an attachment lien is inchoate and inferior to a federal tax lien, is distinguishable on this basis. This was an action for wrongful death, and as the Court stated, "[A]t the time the attachment issued, the fact and the amount of the lien were contingent upon the outcome of the suit for damages". At 214, 75 S.Ct. at 241. Here, the amount of the lien was fixed by the amount due on the promissory notes.

■ It is clear that the "tax lien created by 26 U.S.C. § 6321 as against liens created under state law is governed by the common law-rule—the first in time is the first in right". United States v. Pioneer Amer. Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770, 774 (1963); United States v. New Britain, above. As stated above, the priority of a lien created by state law depends on the time it attached to the property in question and became choate. As stated previously, Wyoming statutes and Wyoming decisions create a lien upon service of the writ of garnishment and the lien does not appear to be merely "contingent, or notice of a future right to perfect the lien". See Security Trust & Savings Bank, above. Despite these substantial arguments, the government contends that its lien is entitled to priority because judgment was not entered prior to its filing of the lien notice.

■ When is "[A] judgment a judgment?" Cedar Creek Oil & Gas Co. v. Fidelity Gas Co., 238 F.2d 298 (9th Cir. 1956). Wyo.Stat. § 1–314 (1957) provides that "All judgments . . . must be entered on the journal of the court, . . . ". In this matter, judgment was rendered on August 9, 1972, but was not entered until October 10, 1972. "Judgment is rendered and exists as such when it is orally announced from the bench . . . ". 49 C.J.S. Judgments § 64; 46 Am.Jur.2d Judgments § 55; People ex rel. Schwartz v. Fagerholm, 17 Ill.2d 131, 161 N.E.2d 20 (1959). Rendition is the judicial act of the court in pronouncing the sentence of the law on the facts in controversy, as distinguished from entry, which is the clerical act of spreading the judgment on the record. See 49 C.J.S. Judgments §§ 100, 107. The government, as a non-party to the state action, seeks to apply the rule that, as to it, the court could only act through the record. See 46 Am.Jur.2d Judgments § 159; Wyo.R.Civ.P. 58. In so doing, it would be necessary for the Court to overlook the fact that plaintiff had actual knowledge of the decision of the District Court for Teton County. "A judgment in and of itself does not necessarily constitute a lien upon any property unless made so by statute". Miller v. Bank of America, 166 F.2d 415, 418 (9th Cir. 1948). Under Wyoming law personal property is bound by a judgment, and a lien is imposed thereon, upon execution, and not upon entry of judgment. See Wyo.Stat. § 1–358 (1957). The monies herein had been, at the time of judgment, levied upon and put under the custody of the court. Having actual notice, the government cannot be heard to claim that it was an innocent bystander. Where a non-party has no actual notice, then would the rule that plaintiff seeks to have imposed be decisive. "In order to establish a lien as against an innocent purchaser, having no notice thereof, the judgment must have been entered of record". See Aetna Life Ins. Co. v. Hesser, 77 Iowa 381, 42 N.W. 325 (1889). The district court, in its decision of August 9, 1972, rendered judgment for Hunt and therein determined the amount due on the notes. See United States v. Schaefer Brewing Co., 356 U.S. 227, 78 S.Ct. 674, 2 L.Ed.2d 721 (1952). Although interest and fees were not determined at that time, such would seem to be an incident to the decision, and would not add to its force or effect. cf. Silverman v. Central Amusement Co., 49 F.Supp. 364 (D.C.D.C.1943); Erstling v. Southern Bell Tel. & Tel. Co., 255 F. 2d 93 (5th Cir. 1958). Having actual notice has been held to take the place of, or requirement for, constructive notice. See Heyward v. United States, 2 F.2d 467 (5th Cir. 1924); Gable Inc. v. Kerl, 334 Pa. 441, 6 A.2d 275 (Pa.1939); annotation, 122 A.L.R. 909.

Therefore, for the reasons set forth herein, the judgment lien of Hunt is superior to, and prior in right, to the federal tax lien of the United States. The motion for summary judgment filed by and on behalf of Hunt is granted. An order will be entered forthwith.