NEW OIL, INC., a Wyoming corporation;
and Ben R. Doud, Appellants
(Defendants),

v.

FIRST INTERSTATE BANK OF
COMMERCE, Appellee
(Plaintiff).

No. 93–262.

Supreme Court of Wyoming.

May 24, 1995.

Georg Jensen, Cheyenne, for appellants.

Dan B. Riggs, Haultain E. Corbett, and
Jonathan A. Botten of Lonabaugh & Riggs,
Sheridan, and James P. Schermetzler, Gil-
lette, for appellee.

Before GOLDEN, C.J., and THOMAS,
MACY, LEHMAN, JJ., and ROONEY, J.,
Retired.

THOMAS, Justice.

The only issue in this case is whether First
Interstate Bank of Commerce (Bank) held a
valid security interest in an oil field pumping
unit superior to any interest claimed by New
Oil, Inc. and its president, Ben R. Doud
(New Oil). The resolution of the case is
controlled by the provisions of the Uniform
Commercial Code (UCC) which govern the
perfection of a security interest. The trial
court determined there was no genuine issue
of material fact and ruled, under applicable
law, the Bank had a perfected security inter-
est in the pumping unit superior to any inter-
est of New Oil. The trial court granted
partial summary judgment to the Bank, rul-
ing it was entitled to possession of the pump-
ing unit and the proceeds of any sale of the
unit. The record demonstrates the trial
court correctly determined there was no gen-
uine issue of material fact; the Bank com-
plied with the applicable provisions of the
UCC in perfecting its security interest; and
the trial court correctly applied the law to
the facts. The Partial Summary Judgment
by the trial court is affirmed.

New Oil, in its Brief of the Appellant,
states the only issue to be:

1. Did the district court err in conclud-
ing that the Plaintiff had a valid and per-
fected security interest in the pumping

unit which was entitled to priority over the interests of the Defendant, New Oil, Inc.?

The Bank, in its Brief of Appellee, presents this statement of the issues:

A. Have the claims of New Oil and Doud become moot by reason of their settlement with the remaining parties wherein New Oil and Doud were paid for the value of the disputed pumping unit?

B. Did the court err in ruling on cross-motions for summary judgment that First Interstate had a valid security interest in Lufkin Pumping Unit Model # C640D–356–144, Serial # F–28456–F?

C. Did the court err in ruling on cross-motions for summary judgment that First Interstate's security interest in the Lufkin Pumping Unit was superior to any interest claimed by New Oil, and that any interest of New Oil in the Lufkin Pumping Unit was subject to the security interest of First Interstate?

D. Did the court err in ruling that First Interstate Bank was entitled to possession of the Lufkin Pumping Unit, and that the counterclaims of Doud and New Oil should be dismissed?

E. Is First Interstate entitled to an award of the costs for this appeal because the Appellants have no reasonable cause for an appeal in accordance with Rule 10.05, *W.R.A.P.?*

The material facts are straightforward. In November of 1988, three individuals formed a partnership under the name of Century Energy (Partnership). The business purpose of the Partnership was to produce oil and gas and, in carrying out that business purpose, the Partnership acquired oil field drilling equipment, including two Lufkin 640 Pumping Units with Serial Nos. F–28456–F (F pump) and E–27892–F (E pump). The serial number for a pumping unit is located on the Sampson Post, which consists of the base and the upright post of the unit.[1]

In June of 1989, the Partnership applied for, and received, a loan from the Bank. A security agreement was executed, which created a security interest in favor of the Bank with respect to both the F pump and the E pump. Various other assets of the Partnership were also subject to the security interest. The Bank filed a corresponding financing statement with the Campbell County clerk on July 5, 1989. The financing statement was executed by all three partners and covered "the following type (or items) of property:"

All rights and interest that debtor has arising out of the attached Exhibit "A." Also secured by all machinery and equipment, furniture and fixtures, accessions, inventory, accounts, instruments, documents, chattel paper, and general intangibles, now owned or hereafter acquired and wherever located.

The F pump and the E pump were listed by serial number in Attachment "A."

In October of 1991, two of the partners agreed to purchase the third partner's interest in the Partnership, and the third partner released his interest as of January 1, 1992. The surviving members of the Partnership, in June of 1992, formed a second business entity. It was a limited liability company, created by filing articles of organization with the secretary of state, and it was known as Century Energy, Ltd. (Limited). The surviving members of the Partnership intended Limited would continue the business of the original Partnership. They did not convey to Limited their Partnership interests in the F pump and the E pump and, so far as the record discloses, the Partnership and Limited continued as separate business entities.

Later in 1992, Limited became indebted to New Oil in the amount of $21,250. On February 26, 1993, Limited signed an agreement with New Oil which purported to transfer the F pump to New Oil in "full and final satisfaction of all monies owed by Century [Limited] to New Oil * * * and New Oil hereby accepts the same 'where is, as is.'" New Oil then stored the F pump in the yard of Cyclone Drilling.

---

1. The serial number is also imprinted on the gear box of a pumping unit. It appears that, in this case, the gear boxes on the F pump and the E pump were interchanged. Because gear boxes wear out and do have to be replaced or changed periodically, the permanent serial number on pumping units is located on the Sampson Post.

Sometime in the next two months, Limited sold the E pump to another firm. That firm had notice of the Bank's security interest in the E pump, and it tendered the purchase price for that pump to the Bank. The Bank applied the proceeds to the debt of the Partnership and released its security interest in the E pump by a partial release filed with the county clerk on March 3, 1993. In April, the Bank became aware the F pump was stored in Cyclone Drilling's yard, and New Oil claimed ownership. New Oil advised the Bank it intended to sell the F pump, regardless of any claim on the part of the Bank. Acting on advice of its attorney, the Bank then caused a notice of its security interest to be welded to the F pump.

The Bank brought this declaratory judgment action to have its rights to the F pump determined. New Oil counterclaimed, seeking a declaratory judgment to establish its interest in the pump and also claiming damages for trespass, interference with contract, slander of title, negligence, malicious prosecution, abuse of process, and outrageous conduct. The parties filed their respective motions for summary judgment, and a hearing was held by the district court. The district court then entered the Partial Summary Judgment, ruling the Bank had a valid security interest in the F pump that was superior to any claim by New Oil. The court also ruled the Bank was entitled to possession of the F pump and dismissed counts I through VII of the counterclaim of New Oil. This appeal is from the Partial Summary Judgment.

Both the Bank and New Oil argued the effect of provisions found in Article 2 of the UCC relating to sales. This case, however, is controlled by the provisions of Article 9 of the UCC which govern secured transactions. Limited's agreement to convey the F pump to New Oil was made to satisfy Limited's antecedent debt to New Oil. That debt was incurred prior to the transfer on February 26, 1993. That transaction was not a sale of goods from one merchant to another as contemplated by Article 2 of the UCC. The provisions of Article 9 of the UCC establish the Bank's interest, created by the security

agreement from the Partnership and perfected by the filing of that security interest.

The record reveals New Oil obtained a consent judgment from the district court against the Partnership, the surviving partners, and Limited for $23,250 on January 7, 1994. It appears the claims of New Oil and Doud had become moot because of a settlement with the surviving partners. The argument with respect to mootness was not made in the trial court, however, and we do not address claims presented for the first time on appeal.

 The requirements for attachment of a security interest set out in WYO.STAT. § 34.1–9–203(a) (1991) are:

> (i) The collateral is in the possession of the secured party pursuant to agreement, or the debtor had signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

> (ii) Value has been given; and

> (iii) The debtor has rights in the collateral.

The Bank received a security agreement, rather than possession of the F pump. The security agreement and a promissory note were signed by all of the original partners on June 23, 1989. Value was given to the Partnership when the Bank disbursed the loan proceeds. At that time, the Partnership had the rights of owners in the collateral.

WYO.STAT. § 34.1–9–110 (1991) also requires a description of the collateral:

> For purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it **reasonably identifies** what is described. (Emphasis added.)

We have held a generic description of collateral is sufficient if that description makes it possible to identify the items with reasonable effort and inspection. *Eggeman v. W. Nat'l Bank*, 596 P.2d 318 (Wyo.1979). The security agreement given by the Partnership to the Bank not only includes an adequate generic description, but the F pump and the E pump specifically are referred to by the Sampson Post serial numbers in the description of the

collateral offered by the Partnership. A description of an item by its serial number identifies that collateral for purposes of Wyo. Stat. § 34.1–9–203(a), even though Wyo.Stat. § 34.1–9–110(a) might not insist upon the specific description. *See* the Official Comment following Wyo.Stat. § 34.1–9–110. The security interest of the Bank attached to the F pump in accordance with the statutory requirements.

The requisites of a financing statement are set forth in Wyo.Stat. § 34.1–9–402 (1991):

A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. * * * A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by the debtor.

After obtaining a security interest that attached in accordance with the statute, the Bank was required to perfect the security interest by filing a financing statement with the Campbell County clerk. Wyo.Stat. § 34.1–9–402. The Bank could have perfected the security interest by filing the security agreement itself. Instead, it filed a financing statement, which met the statutory requirements.

The financing statement identified, in addition to other items, all machinery and equipment as secured collateral. This description gave the minimum information necessary to put New Oil on inquiry notice. *Daly v. Shrimplin,* 610 P.2d 397 (Wyo.1980). *See also Sec. Bank & Trust Co. v. Blaze Oil Co.,* 463 P.2d 495 (Wyo.1970). New Oil did not examine the records of the Campbell County clerk under the name of "Century Energy"

prior to the time it entered into its contract with Limited. Had it done so, New Oil would have discovered the Bank's security interest relating to the Partnership machinery and equipment. New Oil also would have found the surviving partners, two of the individuals who signed the financing statement filed of record, were the same persons as members of Limited. New Oil then would have had sufficient information to make inquiry of the Bank with respect to specific equipment the Bank claimed as collateral. New Oil not only could have but, inevitably would have, discovered the security interest of the Bank in the F pump.

The parties agree the Partnership and Limited are distinct business entities. It also is clear the Partnership never made a formal conveyance of the F pump to Limited. Even if we assume the Partnership had transferred ownership of the F pump to Limited, the Bank's perfected security interest would still attach to the F pump. Wyo.Stat. § 34.1–9–402(g) (1991) provides in the last sentence:

[A] filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer.

This statutory language would protect the Bank even had there been a valid transfer from the Partnership to Limited.[2]

If we were to assume the Partnership simply changed its name to Limited, and there was only one entity involved, we reach the same result under the second sentence of Wyo.Stat. § 34.1–9–402(g) (1991):

Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four (4) months after

2. Official Comment 8 to this portion of Wyo.Stat. § 34.1–9–402(g) (Supp.1994) states that this subsection:

[D]eals with a different problem, namely whether a new filing is necessary where the collateral has been transferred from one debtor to another. * * * This Article now answers the question in the negative. Thus any person searching the condition of the ownership of a

debtor must make inquiry as to the debtor's source of title, and must search in the name of a former owner if circumstances seem to require it.

* * * * * *

The last sentence * * * deals with the continued effectiveness of a filed financing statement to perfect any security interest that continues in the collateral following its disposition.

the change, unless a new appropriate financing statement is filed before the expiration of that time.

If we assume the shift from the Partnership to Limited was such a change in "identity or corporate structure" causing the filed financing statement to become "seriously misleading," Limited did not acquire the F pump within the four-month period after the change. The security interest of the Bank was acquired and perfected long before Limited was formed. Under the statute, the security interest of the Bank followed the F pump even if the shift from the Partnership to Limited were perceived as "seriously misleading."

Perhaps the problem in this case is attributable to the interchange in the gear boxes on the F pump and the E pump. While the record is not clear in this regard, the position of New Oil becomes rational only if a conclusion were reached that, because the F pump had the gear box with E pump serial number on the gear box, the Bank released from its security interest the pump in which New Oil claims its interest. The general practice and methods within the industry are contrary to that position. The record demonstrates the pump transferred to New Oil was the F pump, clearly subject to the security interest of the Bank. Even though the surviving members of the Partnership made the transfer of the pump to New Oil, acting for Limited, Limited could not transfer anything more than it owned. New Oil took the pump subject to the valid perfected security interest of the Bank.

Under Article 9 of the UCC, that perfected security interest had priority over an unsecured interest or any transfer with actual or constructive notice of the Bank's security interest. WYO.STAT. § 34.1–9–312 (1991). The Bank is entitled to possession of the F pump and can dispose of it in satisfaction of the Partnership debt.

■ The Bank seeks the imposition of sanctions under WYO.R.APP.P. 10.05, which provides in pertinent part:

> If the court certifies there was no reasonable cause for the appeal, a reasonable fee to be fixed by the appellate court shall also be taxed as part of the costs in the case. The fee shall not be less than one hundred dollars ($100.00) nor more than five thousand dollars ($5,000.00) to the counsel of appellee; and damages to appellee, in such sum as may be reasonable, shall not exceed two thousand dollars ($2,000.00) * * *.

While the appeal by New Oil is determined to be without merit, the certification required by this rule is not appropriate in this instance. Consequently, we do not award attorney fees or damages to the Bank, pursuant to WYO.R.APP.P. 10.05.

We affirm the Partial Summary Judgment entered by the district court.