In re Beverly A. STRAIGHT, doing business as Centerline Traffic Control & Flagging; and Milton L. Straight, also known as Milton Lloyd Straight, also known as Milton Straight, also known as Mickie Straight, Debtors.

In re Beverly A. STRAIGHT, doing business as Centerline Traffic Control & Flagging, Debtors.

Beverly A. STRAIGHT and Milton L. Straight, Plaintiffs—Counter–Defendants—Appellees and Cross–Appellants,

Randy Royal, Chapter 7 Trustee, Appellee and Cross Appellant,

v.

FIRST INTERSTATE BANK OF COMMERCE, Defendant—Counter–Claimant—Cross–Claimant—Appellant and Cross–Appellee,

Internal Revenue Service, Defendant—Cross–Defendant—Appellee and Cross–Appellee.

BAP Nos. WY–96–1, WY–96–3.
Bankruptcy Nos. 95–10007, 96–21190.
Adv. No. 95–1005.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

April 14, 1997.

Stephen R. Winship of Winship & Winship, P.C., Casper, WY, for Plaintiffs—Counter–Defendants—Appellees and Cross–Appellants.

Stuart S. Healy, Sheridan, WY, for Defendant—Counter–Claimant—Cross–Claimant—Appellant and Cross–Appellee.

Susan A. Berson, Senior Trial Attorney, Tax Division, United States Department of Justice, Washington, DC (Jerome H. Fridkin, Chief, Civil Trial Section, United States Department of Justice, Washington, DC; David D. Freudenthal, United States Attorney, and Donald R. Wrobetz, Assistant United States Attorney, Cheyenne, WY, with her, on the brief), for Defendant—Cross–Defendant—Appellee and Cross–Appellee.

Before McFEELEY, Chief Judge, and PUSATERI and CLARK, Bankruptcy Judges.

## OPINION

JAMES A. PUSATERI, Bankruptcy Judge.

First Interstate Bank of Commerce ("Bank") appeals a judgment of the United States Bankruptcy Court for the District of Wyoming denying its motion for summary judgment, granting a motion for summary judgment filed by the Internal Revenue Service ("IRS"), and granting, in part, a motion for summary judgment filed by the Chapter 13 Debtors, Beverly A. Straight and Milton L. Straight (collectively the "Debtors"). *See Straight v. First Interstate Bank (In re Straight),* 200 B.R. 923 (Bankr.D.Wyo.1996). The Debtors cross-appealed the Bankruptcy Court's judgment denying a portion of their motion for summary judgment.

After the Debtors filed their cross-appeal, Milton L. Straight's Chapter 13 case was dismissed. After the briefs were filed, Beverly A. Straight's Chapter 13 case was converted to a case under Chapter 7 of the Bankruptcy Code, the Chapter 7 case was assigned a new case number, and Randy Royal was appointed Chapter 7 Trustee. The Chapter 7 Trustee has been joined as a party to the appeals pursuant to Fed. R.App. P. 43(a)–(b) and 10th Cir. BAP L.R. 8018–1(e). We will refer to the Debtors for matters which occurred before Mr. Straight's case was dismissed, but will discuss the cross-appeal as being pursued by Ms. Straight since she was the only cross-appellant when the appellate briefs were filed.

In these appeals, we are asked to determine whether the Bankruptcy Court erred in concluding, in relevant part, that: (1) the Chapter 13 Debtors have standing to commence avoidance actions under 11 U.S.C. §§ 544(a), 545(2), and 547(b); (2) the Bank does not have a security interest in a certain account receivable; (3) a payment made to the Bank during the ninety days prior to the filing of the Debtors' bankruptcy case is avoidable as a preference under 11 U.S.C. § 547(b); and (4) a tax lien held by the IRS is not avoidable under 11 U.S.C. § 545(2). We affirm the Bankruptcy Court's judgment.

## I. *Background*

### 1. *The Alleged Interests of the Bank*

#### (a) *The Security Agreements and Business Loan Agreement*

Beverly A. Straight ("Straight") operated a road construction flagging company doing business as Centerline Traffic Control and Flagging. On May 7, 1993, Straight executed a promissory note in the amount of $35,000 and a Security Agreement in favor of the Bank. On May 12, 1993, the Bank filed the Security Agreement in the Office of the Sheridan County Clerk, the county where all of the Debtors' property is located. The Bank extended additional credit to Straight pursuant to a number of promissory notes executed between June 1993 and October 1994. Although not part of the record on appeal, the parties agree that these notes were accompanied by security agreements, all of which were filed with the Office of the Sheridan County Clerk in November of 1994. The definition of "collateral" in these later security agreements is apparently identical to the definition of "collateral" contained in the Security Agreement executed on May 7, 1993, which is part of the record on appeal.

In connection with a loan made on June 8, 1993, Straight also executed a Business Loan

Agreement. This Agreement contains a different definition of the word "collateral" than the one used in the Security Agreement. The Business Loan Agreement was not filed with the Office of the Sheridan County Clerk, the Secretary of State of Wyoming, or in any other place.

(b) *Assignment of Subcontract Proceeds*

Prior to obtaining credit from the Bank, Straight entered into a Subcontract Agreement with a joint venture comprised of Lobo, Inc. ("Lobo") and Carr Construction, Inc. ("Carr"). In June 1993, Straight purportedly assigned payments due to her from the Subcontract Agreement ("Lobo/Carr account") to the Bank. Notice of this alleged assignment was given to Lobo and Carr by the Bank. However, proof of the assignment was not recorded by the Bank with the Office of the Sheridan County Clerk, the Secretary of State of Wyoming, or in any other place.

2. *Payment to the Bank During the 90–Day Pre–Petition Period*

According to documents submitted on appeal, a company called Safetymaster Corporation ("Safetymaster") obtained a default judgment against Straight in Wyoming state court. In July 1994, Safetymaster (or perhaps the court clerk) served writs of continuing garnishment on Lobo and Carr. On December 12, 1994, the state court held a hearing involving the Bank, Safetymaster, Lobo, and Carr; the Bank and Safetymaster presented a stipulation to the court. On December 30, 1994, the state court entered an order as a result of that hearing, ordering Lobo and Carr to pay $26,605.04 immediately into the court's registry and directing the court clerk to disburse $10,000 of that money to Safetymaster and the balance to the Bank. The Bank does not dispute that it received, in December 1994, $16,605.04 paid into state court by Lobo and Carr (the "Stipulation Payment").

This statement of the facts is based on a copy of Safetymaster's default judgment ("Default Judgment"), copies of writs of continuing garnishment served by Safetymaster on Lobo and Carr ("Writs of Continuing Garnishment"), and a copy of the state court's order entered on December 30, 1994 ("State Court Order"), all of which were supplied to this Court as "evidence" as part of the appellate record. The documents, however, are not supported by affidavits attesting to their authenticity and showing them to be admissible under the Federal Rules of Evidence. *See* Fed. R. Bankr.P. 7056; Fed. R.Civ.P. 56(e). Moreover, because the parties have not provided us with their statements of facts and supporting materials, or their memoranda in support of their respective summary judgment motions, it is impossible to discern whether the Default Judgment, Writs of Continuing Garnishment or the State Court Order were part of the record below.

What we do know is that in its recitation of the facts, the Bankruptcy Court said: "On December 30, 1994, [the Bank] was paid $16,-605.04 from the Lobo/Carr contract payments. The payment was made upon stipulation of the parties from funds held by the [state court].... The payment was within 90 days of the filing of the bankruptcy petition." *Straight*, 200 B.R. at 927.[1] In discussing the preference claim, the Bankruptcy Court noted that the Bank contended that "the debtor" (apparently referring to Straight alone) had been involved in the stipulation that led to the Stipulation Payment being made. *Id.* at 932. On appeal, the Bank repeats its assertion that Straight participated in getting the money paid to the Bank. So it is clear the parties informed the Bankruptcy Court that the Bank received $16,605.04 through the state court proceeding, and that the money came from Lobo and Carr.

1. The State Court Order indicates that as of December 12, 1994, Lobo and Carr had not yet paid any garnished money into the state court registry, and on that day, they were ordered to do so. For the Bank to have received the Lobo and Carr money on December 30, 1994, as the Bankruptcy Court stated, Lobo and Carr must have paid the money into the registry on or after December 12 but not later than December 30. Even if the Bank got some interest in the money as soon as it was paid in, the earliest day that might have happened, December 12, is still well within the 90–day preference period, since the Debtors filed for bankruptcy in January 1995.

### 3. *The IRS Tax Lien*

In September 1994, the IRS filed a Notice of Federal Tax Lien in, among other places, the Office of the Sheridan County Clerk for unpaid employment taxes. This lien ("Tax Lien") extends to "all property and rights to property, whether real or personal," belonging to Straight. 26 U.S.C. § 6321.

### 4. *The Debtors' Bankruptcy Case and Chapter 13 Plan*

On January 13, 1995, the Debtors filed a petition seeking relief under Chapter 13 of the Bankruptcy Code. The Bank filed a proof of claim asserting a secured claim in the amount of $150,351.21 as of the petition date. The IRS filed a proof of claim asserting a claim in the total amount of $119,990.62 as of the petition date, of which $87,389.96 is classified as secured, $26,624.36 as an unsecured priority claim, and $5,976.30 as a general unsecured claim.

The Debtors filed a Chapter 13 plan with the Bankruptcy Court providing, in relevant part, that the Lobo/Carr account would be surrendered to the Bank. The IRS objected to the proposed plan because it did not provide for the IRS's secured claim. The IRS asserted that the Tax Lien covered the Lobo/Carr account and had priority over the Bank's lien, claims which the Bank contested. Due to this dispute, the Bankruptcy Court granted the Debtors' motion to continue the hearing on confirmation of their proposed plan, requiring the parties to "independently resolve the disputes which affect confirmation, or to initiate proper pleadings with the court."

### 5. *The Adversary Proceeding Commenced by the Debtors*

After the Bank and the IRS were unable to resolve their dispute regarding their respective lien interests, the Debtors brought an adversary proceeding against them, seeking, in relevant part, to: (1) avoid the Bank's lien in the Lobo/Carr account under 11 U.S.C. § 544(a) and Wyo. Stat. Ann. § 34.1–9–401(a)(i); (2) avoid the Stipulation Payment to the Bank as a preference under 11 U.S.C. § 547(b); and (3) avoid the IRS Tax Lien under 11 U.S.C. § 545(2). The Bank and the IRS answered the Debtors' Complaint, and the Bank asserted ten affirmative defenses, including that the Debtors did not have standing to commence avoidance actions. The Bank also filed a counterclaim against the Debtors and a cross-claim against the IRS. The Bank's counterclaim against the Debtors was subsequently dismissed by the Bankruptcy Court, and the propriety of that dismissal has not been raised on appeal.

On opposing motions for summary judgment, the Bankruptcy Court concluded, in pertinent part, that: (1) the Debtors had standing to pursue avoidance actions under 11 U.S.C. §§ 544(a), 545(2), and 547(b); (2) the Bank did not have a lien on the Lobo/Carr account and, even if it did, its lien was unperfected and void under 11 U.S.C. § 544(a); (3) the Stipulation Payment made to the Bank was avoidable as a preference under 11 U.S.C. § 547(b); and (4) the IRS Tax Lien was not avoidable under 11 U.S.C. § 545(2). *Straight,* 200 B.R. at 927–32. These appeals followed. We have jurisdiction over the appeals pursuant to 28 U.S.C. § 158(a)(1) and (c).

## II. *Standard of Review*

These appeals are from a judgment of the Bankruptcy Court on opposing motions for summary judgment. The United States Court of Appeals for the Tenth Circuit has stated:

> We review the grant or denial of summary judgment de novo, applying the same legal standard used by the [trial] court pursuant to Fed.R.Civ.P. 56(c). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. If there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the [trial] court.

*Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir.1995) (citations and internal quotation marks omitted).

■ With certain exceptions discussed below, the facts material to these appeals are undisputed. Accordingly, we must determine upon de novo review whether the substantive law was correctly applied by the Bankruptcy Court.

## III. *Discussion*

### 1. *Chapter 13 Debtors' Standing To Commence Avoidance Actions*

■ The Bankruptcy Court held, in pertinent part, that the Chapter 13 Debtors had standing to commence avoidance actions under 11 U.S.C. §§ 544(a), 545(2), and 547(b), provided that they deposit any recovery obtained with the Chapter 13 Trustee "for distribution to and for the benefit of the unsecured creditors." *Straight*, 200 B.R. at 928. Since the Bankruptcy Court entered its judgment, however, Straight's husband's case has been dismissed, her Chapter 13 case has been converted to a case under Chapter 7 of the Bankruptcy Code, a Chapter 7 Trustee has been appointed, and the Chapter 7 Trustee has been joined as a party to these appeals. The Chapter 7 Trustee clearly has standing to pursue the avoidance actions asserted in this proceeding. Accordingly, issues related to the Debtors' standing under Chapter 13 are moot and shall not be considered by this Court.

### 2. *The Bank's Interest in the Lobo/Carr Account*

The Bankruptcy Court held that the Bank's Security Agreement does not create a security interest in the Lobo/Carr account because the Agreement does not describe it as collateral. *Straight*, 200 B.R. at 930. Whether the Bank has an interest in the Lobo/Carr account requires us to interpret the Bank's Security Agreement. The Security Agreement states that it shall be construed in accordance with the laws of the State of Wyoming. Accordingly, we begin our analysis with a review of the relevant portions of the Uniform Commercial Code ("UCC") as it has been adopted in Wyoming.

A "security interest" is "an interest in personal property or fixtures which secures payment or performance of an obligation." Wyo. Stat. Ann. § 34.1–1–201(a)(xxxvii). It is not disputed that Article 9 of the Wyoming UCC applies to the Lobo/Carr account. *See* Wyo. Stat. Ann. § 34.1–9–102(1)(a). Under Article 9, a security interest is "not enforceable *against the debtor or third parties* with respect to . . . collateral and does not attach unless: (i) . . . the debtor has signed a security agreement which contains a description of the collateral." Wyo. Stat. Ann. § 34.1–9–203(a)(i). A "security agreement" is "an agreement which creates or provides for a security interest." Wyo. Stat. Ann. § 34.1–9–105(a)(xii). The description of collateral in a security agreement need not be specific, but it must "reasonably identif[y]" the collateral in question. Wyo. Stat. Ann. § 34.1–9–110; *see* Wyo. Stat. Ann. § 34.1–9–105(a)(iii) (" '[C]ollateral' means the property subject to a security interest. . . ."); *New Oil, Inc. v. First Interstate Bank*, 895 P.2d 871, 873 (Wyo.1995) (description of collateral sufficient if it makes it possible to identify items with reasonable effort and inspection); *Wailes v. Rocky Mountain Pre–Mix Concrete*, 783 P.2d 1138, 1140 (Wyo.1989) (must have a reasonable identification of collateral).

■ The Bank's Security Agreement states, in relevant part:

> Collateral. The word "Collateral" means the following described property of [Straight]:
>
> All equipment and inventory on the attached Schedules . . .
>
> In addition, the word "Collateral" includes all of the following, whether now owned or hereafter acquired, whether now existing or hereafter arising and wherever located:
>
> . . . .
>
> (c) All accounts, contract rights, . . . monies, payments, and all other rights, arising out of a sale, lease or other disposition of any of the property described in this Collateral section.

The Schedules attached to the Security Agreement do not mention any type of account, much less the Lobo/Carr account. Nor is the Lobo/Carr account included in the

"accounts" or "contract rights . . . arising out of a sale, lease or other disposition of any of the property described" in the Collateral section of the Security Agreement. Accordingly, the Bankruptcy Court correctly concluded that the Bank's Security Agreement does not create a security interest in the Lobo/Carr account as a matter of law because the description of the collateral covered by the Agreement does not encompass any accounts except those arising from a disposition of Straight's equipment or inventory.

The Bank contends all of the parties assumed that the definition of the word "collateral" in the Security Agreement embraced the Lobo/Carr account and, therefore, the Bankruptcy Court acted improperly when it unilaterally decided that the Bank's interest did not extend to it. The Bank argues that this interpretation was inappropriate on summary judgment because parol evidence would prove that the parties intended the Lobo/Carr account to be encompassed within the definition of the word "collateral" set forth in the Security Agreement.

 It is well-settled that parol evidence is admissible only if a contract is ambiguous. .*See, e.g., Patel v. Harless,* 926 P.2d 963, 965 (Wyo.1996); *Brockway v. Brockway,* 921 P.2d 1104, 1106 (Wyo.1996); *Ames v. Sundance State Bank,* 850 P.2d 607, 609 (Wyo.1993); *see also Mid–West Conveyor Co. v. Jervis B. Webb Co.,* 92 F.3d 992, 995 (10th Cir.1996). " 'An ambiguous contract is an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present. Ambiguity justifying extraneous evidence is not generated by the subsequent disagreement of the parties concerning its meaning.' " *Brockway,* 921 P.2d at 1106 (quoting *Carlson v. Water Unlimited, Inc.,* 822 P.2d 1278, 1281

(Wyo.1991) (internal quotation marks omitted)). The Security Agreement contains no language that might cover the Lobo/Carr account, so under this test, parol evidence would not be admissible, and the Bankruptcy Court was correct in interpreting the Agreement as a matter of law in the context of a summary judgment proceeding. *See, e.g., Mid–West Conveyor,* 92 F.3d at 995 (citing *Teton Exploration Drilling, Inc. v. Bokum Resources Corp.,* 818 F.2d 1521, 1526 (10th Cir.1987)) (question of whether contract is clear or ambiguous is a question of law); *Brockway,* 921 P.2d at 1106 (interpretation of contract is a question of law); *Sannerud v. First Nat'l Bank,* 708 P.2d 1236, 1240 (Wyo. 1985) (same).

 Even if Straight intended to grant the Bank a security interest in the Lobo/Carr account, the Bank's reliance on parol evidence misses the point. A third-party creditor or a bankruptcy trustee exercising avoiding powers is entitled to rely on the clear, unambiguous terms of a security agreement to be informed of what collateral is covered without regard to the intent of the parties. *Sannerud,* 708 P.2d at 1241. As discussed above, the Bank's Security Agreement does not inform third parties that the Bank's security interest might extend to the Lobo/Carr account.[2]

The Bank also maintains that notwithstanding the terms of the Security Agreement, its interest in the Lobo/Carr account is evidenced by the notice of assignment given to Lobo and Carr and the description of collateral contained in the Business Loan Agreement. This argument is flawed for several reasons.

 The notice of assignment served by the Bank on Lobo and Carr does not consti-

---

**2.** The parties have raised several arguments regarding the Bank's perfection of its alleged interest in the Lobo/Carr account. The Bank maintains that the Lobo/Carr account is a "contract right" and its purported interest therein is properly perfected because it filed its Security Agreement with the Office of the Sheridan County Clerk, and, even if the account is not a "contract right," its interest is nonetheless perfected under the "good faith exception" to filing set forth in Wyo. Stat. Ann. § 34.1–9–401. These arguments, however, are irrelevant. Since the Bank does

not have any interest in the Lobo/Carr account under the unambiguous terms of the Security Agreement, perfection is not an issue.

While the Bank does not have an interest in the Lobo/Carr account, it seems to have an interest in other property of Straight identified as "Collateral" in the Security Agreement. Whether the Bank's interest in this property is perfected by an unavoidable lien was not raised before the Bankruptcy Court and has not been raised on appeal.

tute a "security agreement" because it is not an "agreement which creates ... a security interest." Wyo. Stat. Ann. § 34.1–9–105(a)(xii). Moreover, even if it somehow created one, the security interest would not be enforceable because the notice of assignment was not signed by Straight. *See* Wyo. Stat. Ann. § 34.1–9–203.

While an assignment agreement between the Bank and Straight might be deemed to create a security interest, no such agreement was provided to the Bankruptcy Court as part of the summary judgment proceedings.[3] The only evidence in the record on appeal which shows that Straight assigned her interest in the Lobo/Carr account to the Bank is the Bank's notice of assignment, and a letter from Straight to Lobo and Carr stating that they would be receiving an assignment of contract proceeds. For the reasons discussed, such documents are simply not sufficient to create a security interest in the Lobo/Carr account.

In addition, the Business Loan Agreement does not create a security interest with respect to any collateral, much less the Lobo/Carr account. The Agreement defines the word "collateral" as:

> [A]ll property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, deed of trust, assignment, ... or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

This Agreement assumes that a separate contract exists which creates a security interest in Straight's property. As discussed above, the Security Agreement and the notice of assignment do not create a security interest in the Lobo/Carr account. There simply is no security agreement in the record on appeal which contains a description of the Lobo/Carr account as collateral. Thus, the Bankruptcy Court was correct in determining that the Bank does not have a security interest in the Lobo/Carr account.

In the alternative, if the notice of assignment and the Business Loan Agreement could somehow be construed to create a security interest in the Lobo/Carr account, it is undisputed that no document perfecting such an interest was ever filed in the appropriate state and local recording offices and, therefore, the Bank's interest has not been perfected. Wyo. Stat. Ann. §§ 34.1–9–302 & 34.1–9–401(a)(i). Accordingly, any interest created by these documents is avoidable under 11 U.S.C. § 544(a) and we would affirm the Bankruptcy Court's order on this basis.

3. *Avoidance of the Stipulation Payment*

The Bankruptcy Court held that the Stipulation Payment made to the Bank was a preferential transfer avoidable under 11 U.S.C. § 547(b). While, as we noted above, it is unclear what was asserted before the Bankruptcy Court, we do know the Bank argued that the Stipulation Payment was not avoidable under section 547(b) because it was made pursuant to a stipulation with Straight and the State Court Order. *Straight*, 200 B.R. at 932. The Bankruptcy Court correctly concluded that these assertions did not create a defense under section 547. *Id.* Both voluntary and involuntary transfers may be avoided under section 547(b), so neither Straight's agreement, if any, to the Stipulation Payment, nor the fact the state court ordered it to be made has any bearing on its avoidability. *See* 11 U.S.C. § 101(54) ("transfer" includes voluntary and involuntary dispositions of property); 5 Lawrence P. King, *Collier on Bankruptcy* ¶ 547.03 at 547–14 (15th ed. rev.1996) ("The debtor's intent or motive is not material in the consideration of an alleged preference under section 547.")

On appeal, the Bank claims the transfer was made by Safetymaster, not Straight, because Safetymaster had garnished Lobo and Carr. Under Wyoming law, the Bank says, a garnishment "dispossess[es] the judgment

---

3. The Bankruptcy Court noted that "[t]he parties do not dispute that Mrs. Straight assigned the subcontract payments to [the Bank], although the assignments were not provided to the court as [the Bank] indicated." *Straight*, 200 B.R. at 927.

On appeal, the Debtors state that "[d]espite the Bank's references to an assignment of the Lobo/Carr account[ ] ... no such assignment was executed by Straights [sic]."

debtor from his (her) interest in the property in the hands of the garnishee from the date that the garnishee is served with the writ of garnishment."

■ First, we note we could reject the Bank's argument simply because it failed to provide an adequate record for us to determine the state of the parties' factual and legal presentation to the Bankruptcy Court. *See, e.g., Tele–Communications, Inc., v. Commissioner,* 104 F.3d 1229, 1232–33 (10th Cir.1997) (an appellate court has discretion to consider new issues on appeal, but ordinarily will not consider them, so that parties will be encouraged to present all issues at the trial level); *Magnum Foods, Inc. v. Continental Casualty Co.,* 36 F.3d 1491, 1502 n. 12 (10th Cir.1994) (although appellate court may appropriately take judicial notice of developments that are a matter of public record and are relevant to the appeal, review of summary judgment is limited to the record before the trial court; documents submitted in appendix on appeal not presented to the trial court were stricken); *John Hancock Mut. Life Ins. Co. v. Weisman,* 27 F.3d 500, 506 (10th Cir.1994) (in reviewing summary judgment, appellate court will not consider evidence not before the trial court) (citing *Allen v. Minnstar, Inc.,* 8 F.3d 1470, 1475 (10th Cir.1993)). Without the Debtors' and the Bank's statements of uncontroverted facts and supporting materials, and all their memoranda in support of their positions, we cannot tell whether anyone informed the Bankruptcy Court of the facts concerning Safetymaster's state court proceeding which have been presented to us on appeal but which the Bankruptcy Court did not mention in its decision. However, we find that even when we consider all of the facts and legal arguments the Bank has now asserted, the Bank's defense to the preference action still fails because it is based on a misreading of the cited case law and a misunderstanding of the effect of a lien obtained through garnishment.

The Bank's argument begins with the decision in *Platte County State Bank v. Frantz,* 33 Wyo. 326, 239 P. 531 (1925). That case involved a creditor's suit to collect a debt and its pre-judgment attachment of property the debtor had transferred, allegedly in fraud of his creditors. *Id.* 239 P. at 532. Rejecting the argument that the attachment was premature, the court held that a creditor should be allowed to obtain an attachment lien on property alleged to have been fraudulently conveyed without waiting until it has reduced its debt to judgment, although the conveyance should not be set aside until the debt has been established by judgment. *Id.* at 535. Obviously, the decision has nothing to say about the effect of the creditor's attachment lien on the debtor's interest in the property attached, because the debtor had already conveyed his interest to a third party.

From *Frantz,* the Bank moves to *United States v. Hunt,* 373 F.Supp. 1079 (D.Wyo. 1974), *aff'd in part, rev'd in part,* 513 F.2d 129 (10th Cir.1975). As stated by the district court, its published decision addressed the single question whether a federal tax lien takes priority over a prior unrecorded judgment lien when the government had actual knowledge of the announcement of the judgment. 373 F.Supp. at 1080. In the course of its decision, the court said:

> In *State Bank v. Frantz,* 33 Wyo. 326, 239 P. 531 (1925), the Supreme Court of Wyoming held that a writ of attachment created a lien as of the date of service. See *Great Falls Transfer & Storage Co. v. Pan Am. Petroleum Corp.,* 353 F.2d 348 (10th Cir.1965). The Wyoming Supreme Court decision has never been reversed and its conclusion does not appear to be clearly erroneous. As such it is entitled to substantial weight. A garnishment is virtually a process of attachment and under Wyoming law, a garnishee is bound from the time of service. Wyo. Stat. § 1–243 (1957). It gives the creditor a paramount right, although not necessarily title, to such property as a security for his demand.

*Id.* at 1081. On appeal, the Tenth Circuit affirmed the district court's decision on the priority question. 513 F.2d at 133–39. The Circuit also reversed part of the district court's judgment, but that part concerned claims the IRS was asserting against the taxpayer, not the creditor. *Id.* at 139. Except for the dicta quoted above, this decision

did not directly address the question whether the eventual judgment debtor retained any interest in the money that was paid into court after it was garnished.

 Nevertheless, although these cases directly concern only the interest a creditor obtains through an attachment or garnishment, their description of that interest as a "lien" rather than "ownership" or "title" makes clear that Straight retained some interest in the Lobo/Carr account even after Safetymaster garnished it. The Wyoming statutes governing the continuing garnishments employed here specify that such garnishments become liens on the garnished earnings to the extent they are not exempt. Wyo. Stat. Ann. § 1–15–502; *see Barnhill v. Johnson,* 503 U.S. 393, 398, 112 S.Ct. 1386, 1389–90, 118 L.Ed.2d 39 (1992) (absent controlling federal law, state law defines property and interests in property). The statutes also give some substance to the interest the judgment debtor retains: (1) some earnings are exempt from continuing garnishment, §§ 1–15–503(b) and 511; (2) notice of the garnishment is to be given to the debtor, §§ 1–15–505 and 506; (3) the debtor may object to the calculation of the amount of exempt earnings, § 1–15–507; (4) the debtor may apparently claim the property is otherwise exempt, § 1–15–107; and (5) although a debtor would not likely do so to recover garnished earnings, the debtor can obtain the release of garnished property by posting a bond, § 1–15–105. Clearly, the Bank's argument that Safetymaster's garnishment immediately dispossessed Straight of all her interest in the garnished money is wrong.

The preference cases the Bank cites offer it no help, either. The cases all involved a garnishment, attachment, or similar procedure which a creditor obtained before the 90–day preference period, followed by payment to or entry of a judgment for the creditor during the preference period. *Freedom Group v. Lapham–Hickey Steel Corp. (In re Freedom Group),* 50 F.3d 408 (7th Cir.1995); *Battery One–Stop v. Atari Corp. (In re Battery One–Stop),* 36 F.3d 493 (6th Cir.1994); *Wind Power Systems v. Cannon Financial Group (In re Wind Power Systems),* 841 F.2d 288 (9th Cir.1988); *Phillips*

*v. MBank Waco (In re Latham),* 823 F.2d 108 (5th Cir.1987) (per curiam); *Askin Marine Co. v. Conner (In re Conner),* 733 F.2d 1560 (11th Cir.1984); *Butler v. Grimminger (In re Carlson),* 177 B.R. 645 (Bankr.D.Neb. 1995). The question faced by all these courts was whether transfers to the creditors were made, within the meaning of 11 U.S.C. § 547(e)(2), when the garnishment or attachment procedure occurred, or only later when the payment or judgment occurred. All but the *Freedom Group* court concluded such a transfer occurred at the earlier time. Although some of the opinions at least imply that the later payment or judgment was not a transfer at all under section 547, we believe these events were also transfers, *see* 11 U.S.C. § 101(54), but they were not avoidable as preferences because they did not enable the creditors to receive more than they would have without them if the debtor were liquidated in chapter 7. *See* 11 U.S.C. § 547(b)(5); *Aspen Data Graphics v. Boulton (In re Aspen Data Graphics),* 109 B.R. 677, 680–82 (Bankr.E.D.Pa.1990) (where pre-preference period garnishment gave lien under Pennsylvania law, payment of money from garnished bank account during preference period was a transfer but was not avoidable because secured, unavoidable garnishment lien would be paid in chapter 7 liquidation); *see also Barnhill v. Johnson,* 503 U.S. at 396–98, 112 S.Ct. at 1388–90 (for purposes of § 547, what constitutes a transfer and when it is complete is a matter of federal law). The earlier garnishments or attachments were the transfers accomplishing that for the creditors. None of these decisions hold that the debtors retained no interest at all in the garnished or attached property after those transfers.

Section 547(b) allows a trustee to avoid only a "transfer of an interest of the debtor in property." The Bankruptcy Court concluded the materials presented to it showed the Bank received a transfer of Straight's interest in the garnished portion of the Lobo/ Carr account on December 30, 1994. While the record on appeal shows some of her interest had been transferred earlier when Safetymaster obtained its garnishment lien, nothing the Bank has presented shows that Straight's remaining interest in the gar-

nished portion of the account was extinguished before the state court ordered Lobo and Carr to pay that portion into court for distribution to Safetymaster and the Bank. Since, as we have already determined, the Bank's other claims to the Lobo/Carr account were ineffective or unperfected and therefore properly avoided, the Bank has not shown that the Bankruptcy Court erred when it ruled the Stipulation Payment was an avoidable preference.[4]

### 4. *Avoidance of the IRS Tax Lien*

The Bankruptcy Court gave three reasons for rejecting the Debtors' attempt to avoid the Tax Lien under 11 U.S.C. § 545(2). First, it concluded the lien was properly perfected under Wyo. Stat. Ann. § 29–6–204(c)(iv) and was not subject to Article 9 of the Wyoming UCC. Second, the Court ruled that a hypothetical bona fide purchaser under section 545(2) does not qualify as a "purchaser" with the power to invalidate an otherwise perfected tax lien under 26 U.S.C. § 6323(b). Finally, it determined that the Debtors did not have standing to avoid the Tax Lien because they were trying to do so for their own benefit, not for their creditors. *Straight*, 200 B.R. at 928–30. Although this Court cannot agree with all the reasoning employed by the Bankruptcy Court, we are convinced that the result reached was correct.

■ Relying on various provisions of Article 9 of the Wyoming UCC, Straight contends the Tax Lien is unperfected with respect to: (1) two vehicles because the lien was not noted on their titles; (2) $30 in cash and a $175 security deposit which she refers to as "securities," because the IRS did not possess them; and (3) the Lobo/Carr account because the IRS's notice of lien was not filed in the proper office for perfecting a lien in accounts. However, as correctly determined by the Bankruptcy Court, Article 9 of the UCC does not apply to statutory liens like

the one the IRS obtains under 26 U.S.C. § 6321. *See* Wyo. Stat. Ann. § 34.1–9–102(b). Perfection of a federal tax lien is instead governed by the Uniform Federal Lien Registration Act, Wyo. Stat. Ann. § 29–6–201, et seq. To perfect the lien in personal property owned by anyone other than a corporation, partnership, trust, or estate of a decedent, the IRS need only file notice of the lien with the county clerk in the county of the taxpayer's residence. Wyo. Stat. Ann. § 29–6–204(c)(iv). Indeed, a state cannot require the IRS to file its lien notice in more than one location. 26 U.S.C. § 6323(f)(1).

Straight argues that even if the Tax Lien is perfected, it is avoidable under 11 U.S.C. § 545(2) because of certain provisions of 26 U.S.C. § 6323(b). Section 6323(b) invalidates otherwise valid tax liens in certain property as against, among others, a "purchaser" without notice of a tax lien. For purposes of that subsection, a "purchaser" is defined to be a "person who, for adequate and full consideration in money or money's worth, acquires an interest ... in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6). According to Straight, a trustee relying on the status of a hypothetical bona fide purchaser under section 545(2) could use the status afforded to a "purchaser" under section 6323(b) to avoid the Tax Lien on the security deposit, Lobo/Carr account, motor vehicles and $30 cash.

■ Section 6323(b), however, does not apply to the security deposit or the Lobo/Carr account. The security deposit Straight calls a "security" does not qualify as such under section 6323(b)(1) because it does not satisfy the definition contained in section 6323(h)(4). Although she has not identified the specific subsection on which she relies, she apparently contends that the Lobo/Carr account is "personal property" covered by section 6323(b)(3), (4) or (5). These provisions, however, apply only to "tangible per-

---

4. The Debtors' amended complaint does not assert a cause of action under 11 U.S.C. § 550 to recover the avoided Stipulation Payment from the Bank, and the application of section 550 does not appear to have been raised before the Bankruptcy Court. The Bankruptcy Court entered judgment against the Bank for the amount of the

Stipulation Payment and stated that "any recovery [was] to be immediately deposited with the chapter 13 standing trustee." *Straight*, 200 B.R. at 933. Since the issue of recovery of the avoided transfer under section 550 was not raised below, we will not address it even though the parties mentioned it at oral argument.

sonal property." 26 U.S.C. § 6323(b)(3)-(5). The Lobo/Carr account, of course, is intangible property, so a "purchaser" of the account would not be protected under section 6323(b).

Section 6323(b) could apply to the two vehicles, and since "money," oddly enough, is defined to be a "security" under the statute, it could also apply to the $30 cash. *See* 26 U.S.C. § 6323(b)(1)-(2) and (h)(4). In a ruling that would cover any trustee as well, the Bankruptcy Court concluded that the Debtors were precluded from avoiding the Tax Lien because a bona fide purchaser under 11 U.S.C. § 545(2) does not qualify as a "purchaser" for "adequate and full consideration" under section 6323(b). *Straight,* 200 B.R. at 929–30. The phrase "bona fide purchaser" is not defined by the Bankruptcy Code. A "bona fide purchaser" is ordinarily one who, among other things, gives "value" for property. *See* Black's Law Dictionary 161 (5th ed.1979). While "value" would not necessarily amount to "adequate and full consideration," as required under section 6323(b) and (h)(6), it could reach that level. Consequently, a section 545(2) bona fide purchaser is not necessarily precluded from qualifying as a "purchaser" under section 6323. For the reasons set forth below, we find it unnecessary to resolve this issue. However, we note that something more than general definitions is required to determine which level of bona fide purchaser Congress intended to create under section 545(2). *But see United States v. Hunter (In re Walter),* 45 F.3d 1023, 1030 (6th Cir.1995) (because a bona fide purchaser is not necessarily a purchaser for purposes of § 6323(b), it follows the purchaser under § 545(2) is not).

■ The Debtors' amended complaint makes clear that to avoid the IRS's interest in the vehicles, they were relying on 11 U.S.C. § 522(g) and (h), which generally permit a debtor to exempt certain property a trustee recovers through use of the avoiding powers, and under certain circumstances where the trustee has not done so, to exercise the avoiding powers to the extent the debtor could have exempted the property recovered if the trustee had done so. Even if the Chapter 7 Trustee could avoid the Tax Lien on the vehicles under section 545(2), the Debtors cannot. Section 522(c) provides:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—
>
> . . .
>
> (2) a debt secured by a lien that is—
>
> . . .
>
> (B) a tax lien, notice of which is properly filed . . . .

This specific provision overrides the general exemption and avoidance powers granted in section 522(g) and (h), and precludes Straight from avoiding the Tax Lien in this case. *DeMarah v. United States (In re DeMarah),* 62 F.3d 1248, 1250–52 (9th Cir.1995). Although the Trustee is now a party to this proceeding, it seems unlikely he will attempt to avoid the lien on the · vehicles since Straight and her husband had exempted them.

The record on appeal does not make clear whether the Debtors had claimed the cash as exempt, but if they did, section 522(c)(2)(B) precludes their attempt to avoid the Tax Lien on it as well. If not, but for the Bankruptcy Court's ruling about the hypothetical bona fide purchaser under 11 U.S.C. § 545(2), it appears the Trustee could attempt to avoid the Tax Lien on the cash under section 545(2) and 26 U.S.C. § 6323(b)(1). However, it seems unlikely the Trustee would go to that trouble for a mere $30, and we decline to consider such an important issue when it is doubtful the real party in interest would pursue the matter.

## IV. *Conclusion*

For the reasons set forth herein, the Court concludes that: (1) whether the Chapter 13 Debtors had standing to pursue avoidance actions is moot in light of the joinder of the Chapter 7 Trustee to this appeal; (2) the Bank does not have an interest in the Lobo/ Carr account; (3) the Stipulation Payment is avoidable under 11 U.S.C. § 547(b); and (4) the Tax Lien has been properly perfected

and may not be avoided with respect to the vehicles, the security deposit, or the Lobo/ Carr account. Under the circumstances, we decline to determine whether the Trustee could avoid the lien on the cash under section 545(2). Accordingly, the judgment of the Bankruptcy Court is hereby affirmed.