**In re Jessie Dean SHAW.**

**In re Pauline Henry ROSS.**

**In re Jessie Mae WILSON.**

**Bankruptcy Nos. 95–41896, 95–42955, and 95–43900.**

United States Bankruptcy Court, N.D. Mississippi.

May 14, 1996.

Stewart Guernsey, Sardis, MS, for Jessie Dean Shaw, Pauline Henry Ross, and Jessie Mae Wilson.

George F. Hollowell, Jr., Greenville, MS, for ABC Furniture Co.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

These matters come before the court on objections to confirmation filed by Hollowell Furniture Company in the Shaw and Wilson cases and by ABC Furniture Company in the Ross case; and the court, having considered said objections, as well as, the responses thereto, filed by the attorney for the respective debtors, hereby finds, orders, and adjudicates as follows, to-wit:

### I.

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (L), and (O).

### II.

Jessie Dean Shaw (Shaw), Pauline Henry Ross (Ross) and Jessie Mae Wilson (Wilson) are all individual debtors who purchased household goods or furnishings in successive transactions from Hollowell Furniture Co., or its sister company, ABC Furniture Co. (hereinafter referred to collectively as "Hollowell"). The initial sale and all subsequent sales were consummated by the respective buyer executing a retail installment contract in favor of Hollowell. The purchase price was payable in monthly installments with interest, and a security interest was retained by Hollowell in the items listed in the contract.

Between February 1990 and April 1994, Shaw entered into ten separate installment contracts with Hollowell. Ross entered into two contracts, dated June 19, 1995 and July 1, 1995. Wilson entered into three contracts, dated August 3, 1992, March 1, 1993, and July 2, 1994. With each succeeding purchase, the buyers executed a new contract, which incorporated not only the purchase price of the new merchandise, but also the balance remaining on the previous contract(s). Credits for finance charge refunds and insurance rebates were applied.

Shaw, Ross, and Wilson subsequently filed for relief pursuant to Chapter 13 of the Bankruptcy Code. In their respective plans, the debtors reflected the Hollowell claim as being secured only to the extent of the value of the household goods or furnishings listed on their most recent contract. Hollowell filed a timely objection to confirmation, alleging that its claim was secured by a purchase money security interest, not only in the collateral listed on the most recent contract, but in all of the merchandise purchased from Hollowell. The objections to confirmation, as well as, the debtors' objections to Hollowell's secured claims, filed in the Ross and Wilson cases, are now before the court.

### III.

The Bankruptcy Code provides that the court may not confirm a Chapter 13 plan over the objection of the holder of an allowed secured claim unless the creditor either (1) accepts the plan, (2) receives its collateral by way of abandonment, or (3) is paid, with interest, an amount equal to the value of the collateral securing the debt over the life of the plan, with the creditor retaining its lien on the collateral. 11 U.S.C. § 1325.

In the Shaw and Ross cases, the respective debtors have proposed to pay to Hollowell an amount equal to the value of the collateral listed on their most recent contract plus interest. In the Wilson case, the debtor has proposed to abandon the collateral listed on the most recent contract and to retain the remainder of the collateral lien free. As such, the court is being called upon to determine the secured status of the Hollowell claims.[1]

### IV.

An examination of the perfected status of a lien is a matter of state law.

1. The court acknowledges that a determination of the validity, priority, or extent of a lien or other interest in property is more appropriately brought before the court by way of an adversary proceeding pursuant to Bankruptcy Rule of Procedure 7001(2). However, these matters were litigated without objection to any perceived procedural infirmity.

Under Mississippi law, the filing of a financing statement is not required in order to perfect a purchase money security interest in consumer goods:

§ 75–9–302. **When filing is required to perfect security interest: Security interest to which filing provisions of this chapter do not apply.**

(1) A financing statement must be filed to perfect all security interests except the following:

. . . .

(d) A purchase money security interest in consumer goods . . .

Miss.Code Ann. § 75–9–302(1)(d).

The terms "purchase money security interest" and "consumer goods" are both defined terms in the Mississippi version of the Uniform Commercial Code:

§ 75–9–107. **Definitions: "purchase money security interest".**

A security interest is a "purchase money security interest" to the extent that it is

(a) taken or retained by the seller of the collateral to secure all or part of its price; or

(b) taken by a person who by making advances or incurring an obligation given value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

§ 75–9–109. **Classification of goods: "Consumer goods"; "equipment"; "farm products"; "inventory."**

Goods are

(1) "Consumer goods" If they are used or bought for use primarily for personal, family or household purposes; . . .

Miss.Code Ann. § 75–9–107; § 75–9–109(1)

■ The court finds that the merchandise purchased by the respective debtors from Hollowell, as listed on the contracts entered into evidence, qualifies as "consumer goods" under Mississippi law. If Hollowell holds a purchase money security interest in *all* of the collateral listed on the succeeding contracts with the respective debtors, Hollowell would enjoy "automatic" perfection of its security interest and would prevail on its objections to confirmation. However, if Hollowell holds a

purchase money security interest only in the collateral listed on the most recent contract with each debtor, Hollowell would hold an unperfected security interest in the remaining collateral in the absence of filed UCC Financing Statements. For the reasons set forth hereinbelow, the court finds that Hollowell holds a purchase money security interest only in the collateral listed on the most recent contract executed by each debtor.

V.

The Fifth Circuit, in *Roberts Furniture Co. v. Pierce (In re: Manuel),* 507 F.2d 990 (5th Cir.1975), had occasion to examine the effect of succeeding credit sales contracts on a purchase money security interest. The underlying facts of the case were similar to those presently before the court:

On December 7, 1972, [the debtor] purchased certain household furniture from appellant Roberts Furniture Co. On February 13, 1973, he purchased a television set, also from appellant. The purchase money security agreement he then signed referred to an unpaid balance of $573.32 from the first purchase, deducted $116.03 for refunds, leaving a prior unpaid balance of $457.29, which was added to the unpaid balance on the television set, $174.07, making a total balance owed of $631.36. This agreement was never filed for perfection as Georgia law required, nor was perfection obtained by retaining possession. The agreement also failed to indicate the order in which purchases were paid off, and the amounts still due on each item and secured by the paid-up items. The apparent purpose of Roberts Furniture was to ensure that title to nothing passed until title to all passed.

*Id.* at 991–92.

In construing the Georgia Uniform Commercial Code statute defining a purchase money security interest, which had language identical to that of the Mississippi Code as set forth hereinabove, the Fifth Circuit observed as follows:

A plain reading of the statutory requirements would indicate that they require the purchase money security interest to be in the item purchased, and that, as the judges below noted, the purchase money security interest cannot exceed the price of what is

purchased in the transaction wherein the security interest is created, if the vendor is to be protected despite the absence of filing. Except as to the television set, if at all, the interest here is not a 'purchase money security interest' because it is not taken or retained by the seller of the collateral solely to secure all or part of its price. Roberts attempted to make collateral secure debt other than its own price.

*Id.* at 993.

■ The court in *Manuel* applied what has since become known as the "transformation rule." Pursuant to this approach, if collateral is used to secure a debt other than its own purchase price, the creditor's original purchase money security interest in the collateral is transformed into a nonpurchase money security interest. Although the *Manuel* decision applies the transformation rule within the Fifth Circuit, language in the opinion leaves the door open for an exception to apply if the facts of a specific transaction allow. In the *Manuel* decision, the court noted the following: "The problem here begins with the fact that the security agreement filed with the court shows about $150.00 paid on about a $900.00 total debt for seven pieces of furniture and a T.V. set, with no clues as to what items are paid for and which are not, nor does any rule of first-bought, first-paid for appear." *Id.* The court also noted that the credit sales agreement entered into by and between the debtor and the seller "failed to indicate the order in which purchases were paid off, and the amount still due on each item and secured by the paid-up items." *Id.* Since *Manuel*, courts have recognized that a purchase money security interest can survive through successive sales agreements when express contractual language allocating payments is present, i.e., the purchase money security interest can be "traced.". *In re: McCall*, 62 B.R. 57 (M.D.Ala.1985); In *In re: Nolen*, 53 B.R. 235, 42 UCC Rep. 296 (Bankr.M.D.Tenn. 1985). In *In re: McCall*, the court observed as follows:

> Instead of seeing an additional sale as causing a total transformation of the interest, courts recognize that the seller can still hold a purchase money security interest in the goods "to the extent" those goods secure their own price. However, to the extent those goods have been released from the credit agreement by the application of monthly payments, the seller cannot claim a purchase money security interest. This approach, which recognizes that an additional purchase does not always cause a total transformation of the interest, has come to be known as the "dual status" rule .... this dual status rule might apply when a seller "contractually provides some method for determining the extent to which each item of collateral secures its purchase money." (citation omitted)

*In re: McCall*, 62 B.R. at 59.

The court in *McCall* examined the credit sales agreement entered into by the parties and found express contractual language allocating payments according to a first-in, first-out schedule. Under the terms of the contract, goods remained subject to the seller's security interest only until their purchase prices were paid in full. More importantly, the contract expressly provided that payments would be applied to goods in the order in which they were purchased. Under this "first-in, first-out" allocation method, old debts are paid in full before payments are applied to new debts. In *McCall*, the court found the express contractual language to be adequate so as to apply the "dual status" allocation method. The court held that the seller maintained a purchase money security interest in all collateral for which the purchase price had not been paid in full, even though the amount remaining due was incorporated into a subsequent or newer credit sale agreement. The *McCall* court made the following well reasoned observations in regard to the dual status approach:

> This type of allocation scheme supports the policy of encouraging more favorable credit terms since sellers still retain a purchase money security interest in each item of collateral until that item is paid for. At the same time, the first-in, first-out system protects buyers from over-reaching creditors since add-on agreements cannot be used as a pretext for retaining title to all of the goods until the total debt is paid off.

*Id.* at 60.

## VI.

■ A close review of the Hollowell contracts reveals no express contractual lan-

guage allocating payments to individual items purchased. Each contract contains the following language ..."I do hereby consent and agree that the said property and the title to the same shall be and remain the property of the Seller, or Holder hereof, until fully paid for as above agreed ..." The property described on each contract is *only* the property being purchased pursuant to that individual contract. The following language is included on the contract directly above the property description: "Purchaser grants the seller named above a purchase money security interest under the Mississippi Uniform Commercial Code in the following described property." Clearly each contract provides to Hollowell a purchase money security interest only in the property described thereon.

Each Hollowell contract also contains the following language ..."I/We warrant that the value of the collateral on this transaction is $_____." On each contract this blank is filled in with a dollar amount equivalent to the total sales price reflected on the contract. The total sales price includes the purchase price of the merchandise described on the contract, *as well as*, the *remaining balance* due from the previous contract. Since the "value of collateral" figure includes the dollar amount of the items being currently purchased and the previous balance due, an inference can be drawn that Hollowell is claiming a purchase money security interest only to the extent of the *unpaid* merchandise. Nevertheless, the contract contains no language allocating value to any individual items of collateral acquired through the prior contracts. Since there is no way to determine which items of collateral may have been released from the previous credit agreements as being paid in full, the "dual status" exception to the "transformation rule" does not apply in these proceedings.

Accordingly, it is the opinion of the court that although the Hollowell contracts initially create a purchase money security interest, the language in the contract form is inadequate to maintain or transfer that interest over to the next succeeding contract. In the absence of contractual language sufficient to create an exception to the "transformation rule," this court, applying the holding of *Manuel*, concludes that the purchase money security interest granted by each Hollowell contract cannot extend to the next succeeding contract.

Although Hollowell holds a purchase money security interest in the collateral described on the most recent contract entered into with each debtor, the purchase money security interest as to all other collateral described in the previous contracts has been transformed into a non-purchase money security interest. Therefore, the court finds that, in the absence of filed UCC Financing Statements, the respective claims of Hollowell are secured to the extent of the value of the collateral described on the most recent contract entered into with each of the three debtors. The remaining portions of the Hollowell claims are unsecured.

An order will be entered in each of the above styled and numbered Chapter 13 proceedings consistent with the findings and conclusions herein pursuant to Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58. This opinion shall constitute findings and conclusions pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.