**In re Alfredo V. CARLOS & Leticia Carlos, Debtors.**

**Bankruptcy No. LA 97-31026 SB.**

United States Bankruptcy Court, C.D. California.

Oct. 28, 1997.

---

David S. Brower, Leibowitz & Constantino, A Professional Corporation, Santa Ana, CA, for Sears, Roebuck and Co.

Duke Salisbury, Los Angeles, CA, Trustee.

Heide Kurtz, San Pedro, CA, Trustee.

### FIRST AMENDED OPINION ON MOTION BY SEARS TO WITHDRAW MOTION FOR APPROVAL OF REAFFIRMATION AGREEMENT AND ON VALIDITY OF SEARS SECURITY INTEREST

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

The underlying motion, brought by Sears, Roebuck & Co. ("Sears") for approval of a reaffirmation between it and the debtors, raises three issues. The first issue is whether Sears has a valid security interest in the washing machine, television and VCR at issue in the reaffirmation agreement, to support the reaffirmation agreement. The second issue is whether Sears has standing to withdraw the approval motion, as it has purported to do in this case. The third issue is whether Sears has standing to make the motion to approve the reaffirmation agreement in the first place.

Sears has shown no evidence of a security interest in the goods at issue, apart from a statement on the charge slip signed by the debtor when the goods were purchased. The court finds that this is insufficient to create a valid security interest under California law. The court further holds that Sears lacks standing to withdraw a reaffirmation agreement. Accordingly, the court has proceeded

to take testimony from the debtors, and to disapprove the reaffirmation agreement. Finally, the court has issued an order to Sears to show cause whether it has standing to move for the approval of the reaffirmation agreement in the first instance.

## II. RELEVANT FACTS

The Sears motion for approval of the reaffirmation agreement contains an "introduction" of a page and a half, that alleges that the purpose of the reaffirmation agreement is to permit the debtors to keep a washer, television and VCR in which Sears purports to hold a purchase money security interest. The introduction further states that debtors used their Sears charge card to purchase a washing machine for $449.99[1] on the day after Thanksgiving in 1995, and a 19-inch television and a VCR for $499.76[2] on March 17, 1997. The debtors filed their bankruptcy case on June 2, 1997.

The introduction also states that debtors had an account balance of $207.04 when they purchased the washing machine, that thereafter they made payments totaling $320.00, and that they had a balance of $1,646.05 when they filed their bankruptcy case. The motion discloses no information on how Sears applied the payments, and does not disclose the interest rate charged on the outstanding balances. The introduction states that the debtors made other undisclosed charges on their card for "non-durable goods," presumably after the washing machine purchase. The motion further states that the debtors "pledged a security interest in the purchased

merchandise," documented by the attached sales tickets.

The debtors still posses the goods here at issue and want to keep them. The motion states (not surprisingly) that the debtors are unable to make a lump sum payment to redeem the goods.

The evidence that Sears has presented in support of the reaffirmation consists in a one-page document entitled "REAFFIRMATION AGREEMENT SECURED", which Sears filed with its motion to approve the agreement, and copies of two charge slips.

Sears claims a valid security interest in the merchandise here at issue. The only evidence that Sears has submitted in support of this claim is a statement at the bottom of each of the sales slips which says, "PURCHASED UNDER MY SEARSCHARGE AGREEMENT, INCORPORATED BY REFERENCE, I GRANT SEARS A SECURITY INTEREST IN THIS MERCHANDISE UNTIL PAID, UNLESS PROHIBITED BY LAW" (capitalized in original). Sears has not provided any evidence of the Searscharge agreement.

The debtors attended the meeting of creditors required by Bankruptcy Code § 341(a). According to their testimony, in the meeting room they were approached by Lynn Castro, who claimed that she was a lawyer[3] representing Sears. Ms. Castro told the debtors that they would have to accept a reaffirmation agreement[4] providing for the payment of $780 in installments of $19 per month to keep the washing machine, television and VCR. Alfredo Carlos signed the reaffirma-

---

1. In addition to the $449.99 charge for the washing machine, the sales slip shows a $99.99 charge for a three-year extended warranty, a $35.00 delivery charge, and tax of $37.12, for a total of $622.10. Apparently Sears is not seeking the reaffirmation of the debt arising from these charges.

2. The sales slip shows a charge of $229.99 for the television, less a sale credit of $10.11, plus $59.99 for a three-year extended warranty. For the VCR, it shows a charge of $279.88, plus $79.99 for a three-year extended warranty. The sales tax totaled $41.23. As with the washing machine, Sears apparently is seeking a reaffir-

mation only of the base price for the VCR and the television set.

3. A check with the California State Bar discloses that there is no attorney licensed to practice law in California named Lynn Castro. Similarly, no such person is admitted to practice before this court.

4. The reaffirmation agreement is not on Official Form 250, and contains many deficiencies that prevent its approval, in the view of the court. However, the sufficiency of the agreement is not at issue in the matter before the court. The court has issued to Sears an order to show cause to address this issue.

tion agreement, but Leticia Carlos did not sign it.

Although Sears has provided no accounting with respect to the charge account, it alleges that it has followed the first-in, first-out payment recording system, as required by California law, CAL.CIV.CODE § 1810.6 (West 1997), and that the payments have been insufficient to discharge its alleged security interest in the items at issue.

The debtors' schedules disclose that Mrs. Carlos has a monthly income of $780 after deductions, and that Mr. Carlos is unemployed. Their extremely lean monthly budget totals $1901, including a mortgage payment of $1008. They cannot afford a reaffirmation agreement with Sears: indeed, their monthly net income is insufficient to make even their mortgage payment alone. Their debts, apart from their house, include seven charge accounts, totaling some $20,000, and a $21,000 debt to General Motors on a returned vehicle. The Sears debt is one of the smaller charge account debts.

Sears failed to appear at the reaffirmation hearing. Instead, it filed a document entitled, "Notice of Withdrawal of Motion for Approval of Reaffirmation Agreement." Both of the debtors appeared and testified.

### III. LEGAL ANALYSIS

This is a core proceeding under the Bankruptcy Code, as defined in 28 U.S.C.A. § 157(b)(2)(O) (West 1993).

Sears sells a wide variety of goods in its stores, including clothing, tools, machines, hardware, tires, plants and gardening supplies, furniture and eyeglasses. Like most Sears reaffirmation agreements that have come before this court, the agreement here at issue involves only durable goods.

#### A. Validity of Security Interest

The only evidence that Sears has submitted of its alleged security interest is the language in its charge slips for the goods

here at issue. Because Sears failed to attend the hearing on the reaffirmation agreement, it has defaulted in presenting any further evidence on this subject in this case.

In this case, the court must determine whether this evidence alone is sufficient to establish a valid security interest under California law. If the evidence is sufficient, the court must give serious consideration to the reaffirmation agreement, because Sears' security interest would otherwise ride through the bankruptcy and would be enforceable after the case is finished.[5] In that event, it may be in the debtors' best interest to arrange a reaffirmation deal with Sears so that the debtors can keep the property at issue. On the other hand, if Sears has no valid security interest in the property, the court cannot make the finding required by Bankruptcy Code § 524(c)(6) that the reaffirmation is in the best interest of the debtor.

■ Like all other property interests, the nature, validity and perfection of security interests are created and defined by state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Because the transactions here at issue occurred in California, between California residents and a business establishment in California, California law governs the security interests here at issue, apart from bankruptcy law. *See, e.g.,* CAL.CIV.CODE § 1802.19 (West 1997) ("For the purposes of [the Unruh Act], a retail installment contract, contract, retail installment account, installment account, or revolving account shall be deemed to have been made in this state and, therefore, subject to the provisions of this [Act], if either the seller offers or agrees in this state to sell to a buyer who is a resident of this state or if such buyer accepts or makes the offer in this state to buy, regardless of the situs of the contract as specified therein.")

■ Unless bankruptcy law provides differently,[6] a property interest is not analyzed

---

5. The bankruptcy discharge terminates any personal liability of the debtor for the secured debt. After the end of the bankruptcy case and the termination of the automatic stay, the secured creditor's remedy is limited to going to state

court to foreclose on the property. *Mayton v. Sears, Roebuck & Co. (In re Mayton),* 208 B.R. 61, 66 (9th Cir. BAP 1997).

6. The constitutional authority of Congress to establish "uniform Laws on the subject of Bank-

differently simply because one party is in bankruptcy. *Butner*, 440 U.S. at 55, 99 S.Ct. at 918; *Simon v. Chrysler Credit Corp. (In re Babaeian Transp. Co.)*, 206 B.R. 536, 541 (Bankr.C.D.Cal.1997). In this case it does not appear that the bankruptcy law alters any rights of Sears as a secured creditor with respect to the durable goods at issue. Thus we turn to California law to determine whether Sears has a valid security interest in this property.

### 1. California Civil Code Requirements

■ We turn first to the California Civil Code requirements for a valid security interest resulting from a consumer credit transaction. *See* CALIFORNIA CIVIL CODE §§ 1799.90–1812.10 (West 1997). This portion of the California Civil Code contains the California retail installment sales legislation. The purpose of such legislation is to protect retail buyers of goods from unknowingly assuming excessive charges by requiring that all charges and terms be set forth by a retail seller before a contract is signed by the buyer. *See, e.g., Sears, Roebuck & Co. v. Oszajca (In re Oszajca)*, 207 B.R. 41, 44 (2d Cir. BAP 1997).

### a. Unruh Act

The Unruh Act, enacted by the California legislature in 1959, applies to the sale of goods or furnishing of services by a retail seller[7] to a retail buyer[8] for a deferred payment price payable in installments. *Id.* § 1802.5.

The Act divides retail installment sales into two categories: sales pursuant to "retail installment contracts," and sales pursuant to "retail installment accounts." Generally, a retail installment account,[9] generally known as "open end credit," is a revolving account providing for interest calculated on the periodic outstanding balance. Credit cards are now the most common form of such accounts.

In contrast, a retail installment contract,[10] generally known as "closed end credit," is a credit contract for a single purchase of a specific list of items. *See generally Oszajca*, 207 B.R. at 47. The court assumes that the Sears charge card account at issue in this case qualifies as a retail installment account under California law.[11]

### i. Retail Installment Accounts

Section 1810.1 specifies the disclosures that are required before the first transaction is made in a retail installment account. The creditor must disclose the conditions under which a finance charge may be imposed (including the time period within which a bill may be paid without incurring a finance

---

ruptcies throughout the United States" includes the power to make certain changes in the rights of secured creditors. *Butner*, 440 U.S. at 54, 99 S.Ct. at 917; *Wright v. Vinton Branch*, 300 U.S. 440, 470, 57 S.Ct. 556, 565, 81 L.Ed. 736 (1937); *Wright v. Union Central Ins. Co.*, 304 U.S. 502, 515, 58 S.Ct. 1025, 1032–33, 82 L.Ed. 1490 (1938).

7. A retail seller is defined as a person engaged in the business of selling goods or furnishing service to retail buyers. *Id.* § 1802.3.

8. A retail buyer is defined as a person who buys goods or obtains services from a retail seller in a retail installment sale and not principally for the purpose of resale. *Id.* § 1802.4.

9. A retail installment account is defined as follows:

[a]n account established by an agreement entered into in this state, pursuant to which the buyer promises to pay, in installments, to a retail seller, his outstanding balance incurred in retail installment sales, whether or not a security interest in the goods sold is retained

by the seller, and which provides for a finance charge which is expressed as a percent of the periodic balances to accrue thereafter providing such charge is not capitalized or stated as a dollar amount in such agreement. *Id.* § 1802.7.

10. A retail installment contract is defined, in relevant part, as:

[A]ny contract for a retail installment sale between a buyer and seller, entered into or performed in this state, which provides for (a) repayment in installments ... and in which the buyer agrees to pay a finance charge, or in which the buyer does not agree to pay a finance charge but the goods or services are available at a lesser price if paid for by either cash or credit card ... or (b) which provides for payment in more than four installments. CAL CIV CODE § 1802.6 (West 1997).

11. Sears has failed to present any evidence even on this issue. However, the court assumes for the purposes of this opinion that Sears could provide such evidence.

charge); the method of determining the balance upon which a finance charge may be made; the method of determining the finance charge (including disclosure of any minimum finance charge); the conditions under which any other charges may be imposed and the method by which such charges are determined; and the minimum periodic payment required. *Id.*

As an alternative to section 1810.1, the California Civil Code permits that the disclosures be made:

> in any manner, method, or terminology required or permitted under Regulation Z [promulgated by the Board of Governors of the Federal Reserve Board], as in effect at the time that such disclosure is made....

CAL.CIV.CODE § 1801.5 (West 1997). Section 1801.5 permits a creditor to alter the format (the "manner, method or terminology") for providing the required information, by permitting the creditor to use the Regulation Z format instead of that mandated in the California Civil Code. *See* Regulation Z, 12 C.F.R. § 226 (1997) ("Regulation Z"). This procedure is adopted because, in addition to meeting the Unruh Act disclosure requirements, a California retail installment lender normally must make the disclosures required by Regulation Z, and in the format prescribed therein.

However, section 1801.5 does not excuse a creditor from making the substantive disclosures required by California law. For installment charge accounts, the substantive disclosures are specified in section 1810.1. Furthermore, section 1801.5 does not alter the consequences under California law if the required disclosures are not made.

Regulation Z does not alter the disclosure requirements of section 1810.1. For credit cards, Regulation Z does preempt state disclosure requirements at the time of solicitation or application, and at the time of renewal of a credit card. 12 C.F.R. § 226.28(d) (1997). In contrast, Regulation Z preempts state disclosure requirements applicable to the credit card agreement only to the extent that state requirements are inconsistent with Regulation Z. *See id.* §§ 226.28, 226.6.

Furthermore, Regulation Z has its own set of disclosures that Sears must also make. The required disclosures at the time of the solicitation or application include the annual percentage rate, any annual or other periodic fees, any minimum or fixed finance charge,

any transaction charges, the grace period before finance charges are imposed, the balance computation method, any cash advance fee, any late payment fee, and any over-the-limit fee. 12 C.F.R. § 226.5a(b) (1997); *see also* 15 U.S.C.A. § 1637 (West 1982 & Supp. 1997). In addition, Regulation Z requires disclosures in an initial disclosure statement that include details on the finance charge and other charges, security interests and a statement of billing rights. 12 C.F.R. § 226.6 (1997).

### ii. Security Interests—Retail Installment Account Purchases

Section 1810.1(f) specifies the conditions under which a creditor may obtain a security interest to secure payment of charges on a charge account. It requires disclosure, before the first transaction on the card is made, of:

> [t]he conditions under which the creditor may retain or acquire any security interest in any property to secure the payment of any credit extended on the account, and a description or identification of the type of the interest or interests [to be taken].

CAL.CIV.CODE § 1810.1(f) (West 1997).

This provision is unusual for retail installment sales legislation. Typically such legislation makes no provision for security interests in consumer goods purchased under a retail installment agreement. *See Sears, Roebuck & Co. v. Oszajca (In re Oszajca),* 207 B.R. 41, 45–46 (2d Cir. BAP 1997), and cases and statutes cited therein. In states with such statutes, the validity of such a security interest is determined under that state's version of the Uniform Commercial Code. *See e.g., id.; Carter v. W.S. Badcock Corp. (In re Carter),* 180 B.R. 321, 324 (Bankr.M.D.Ga.1995); *In re Wiegert,* 145 B.R. 621, 622–23 (Bankr.D.Neb.1991); *In re Hardage,* 99 B.R. 738, 740–41 (Bankr. N.D.Tex.1989). In contrast, California has specific statutory provisions governing security interests in goods subject to retail charge agreements.

The charge slips in this case make none of the disclosures mandated by section 1810.1 or by Regulation Z, and they fail to make them at the time required. Most notably for this case, the charge slips make no disclosures meeting the requirements of section

1810.1(f) for taking a security interest. The consequences of the failure to make the disclosures required by section 1810.1(f) are specified in section 1799.100 of the California Civil Code.[12]

**b. Section 1799.100**

California Civil Code § 1799.100 imposes specific requirements for taking a security interest in any goods (as defined in the California version of the Uniform Commercial Code § 9–105(h)) "used or bought for use primarily for personal family or household purposes...." CAL.CIV.CODE § 1799.100(d)(1) (West 1997).[13] Section 1799.100 is limited to items with a fair market value of less than $1000 each at the time that the security interest is created. *Id.*[14]

The substantive requirements of section 1799.100 are as follows:

> An agreement or other document creating a non-possessory security interest ... shall contain a statement of description reviewed and signed by the consumer indicating each specific item of the personal property in which the security interest is taken.

*Id.* § 1799.100(b) (West 1997).[15] Subsection (c) further provides that such a security interest may only be enforced by judicial action, unless the property is abandoned or freely and voluntarily surrendered by the consumer. *Id.* § 1799.100(c) (West 1997). Self-help repossession is prohibited by this subsection. Demand for the turnover of the property is also prohibited.

Section 1799.100(b) provides an alternative method for compliance with the disclosure requirements. If the security interest arises from a consumer credit contract subject to the Unruh Act (CAL.CIV.CODE §§ 1801–1812.20), compliance with section 1803.3(a) or section 1810.1(f) is sufficient instead of meeting the requirements of section 1799.100(b). *Id.*

Subsection (e) specifies the consequences of violating the substantive provisions of section 1799.100: "Any security interest taken in violation of either subdivision (a) or (b) is void and unenforceable." *Id.* § 1799.100(e). In addition, subsection (f) authorizes any person injured by a violation of section 1799.100 to bring a civil action for the recovery of damages, equitable relief and attorney's fees and costs. *Id.* § 1799.100(f).

Section 1799.100(e) thus dictates that Sears has shown no valid security interest in the property giving rise to the reaffirmation agreement. The court concludes that Sears lacks any security interest in the goods at issue.

**2. California Commercial Code**

■■ In general, the validity of a security interest in goods is determined under California law by reference to Division 9 of the California Commercial Code, which is California's version of Article 9 of the Uniform Commercial Code. For a valid security interest in consumer goods, Sears must meet these requirements in addition to those set forth in the California Civil Code. Sears has the burden of proof to show that it has a valid security interest.

■■ Under both the Uniform Commercial Code and the California version thereof, a valid security interest in personal property requires that (1) either (a) the debtor has signed a security agreement which contains a description of the collateral, or (b) the secured party has possession of the property pursuant to agreement, (2) value has been given, and (3) the debtor has rights in the collateral. CAL.COM.CODE § 9203 (West 1997). A description of collateral is sufficient if it reasonably identifies the collateral.

---

**12.** Remedies are also provided for violations of Regulation Z. See 12 U.S.C.A. § 1640 (1982 & Supp.1997). In general, these remedies are statutory damages. *Id.*

**13.** The requirements of section 1799.100 also apply to tools of trade and to health aids. *Id.*, § 1799.100(d)(2). No such property is at issue in this case.

**14.** In addition, vessels, vehicles and aircraft are excluded. *Id.*

**15.** Section 1799.100(a) also prohibits the taking of a non-possessory non-purchase money security interest in "household goods", as defined in subsection (h). *Id.*, § 1799.100(a) & (h) (West 1997). These provisions are not at issue in this case.

*Greyhound Real Estate Finance Co. v. Official Unsecured Creditors' Committee (In re Northview Corp.)*, 130 B.R. 543, 546 (9th Cir. BAP 1991).

In this case there is no question that the second and third elements are satisfied.[16] In addition, the charge slips are sufficient as signed security agreements.

The main issue governing the validity of Sears' security interest in this case is whether the charge slip contains an adequate description of the collateral. Only one of the sales slips is adequate in this respect. The first, dated 11/24/95, involves merchandise described as "Washer, W." The second involves merchandise described as "TV F19240G" [17] and "VCR, HRVP63".

■ Collateral must be described in one of two ways—by type or by item. *First City Bank v. Webb Co. (In re Softalk Pub. Co.)*, 64 B.R. 523, 525 (9th Cir. BAP 1986). The sufficiency of a description of collateral turns on whether the description adequately describes the type of assets or the individual items. *See In re Bradel,* Bankr. No. 89 A. 1027, 1990 WL 86714 (Bankr.N.D.Ill.1990), at *4.

■ A description of assets by type is sufficient if it reasonably identifies what is described. *Greyhound Real Estate Fin. Co. v. Official Unsecured Creditors' Committee (In re Northview Corp.)*, 130 B.R. 543 (9th Cir. BAP 1991). Such a description is sufficient if the collateral is exclusively used for the described purpose or can only be classified as the type of collateral described. *Bradel*, at *4.

■ Individual items are sufficiently specified if the description meets a two-part test. First, if the collateral is such that the debtor may own other similar items (regardless of whether the debtor in fact has more than one), the description must enable a third party to distinguish the collateral from other property. *Id.* Alternatively, if the debtor is not likely to own more than one such item, a more general description is sufficient. *Id.*

■ The court adopts a community standard in determining whether a debtor may own other similar items to those listed on a charge slip. For consumer purchases, a person is likely to own more than one item of a particular type (such as a refrigerator, a baseball glove or a pair of socks) if an ordinary consumer in the community would have more than one item of this type. While the debtors in this case may be in an economic status where multiple ownership of such goods is unlikely, the court has been provided no evidence on this issue. Furthermore, the court finds it impractical to discriminate between economic classes on this issue: there should be single rule applicable to all debtors, absent unusual circumstances.

■ In this case, the court finds that a debtor in the Central District of California is only likely to own one washing machine. Thus the description on the Sears charge slip is sufficient for California Commercial Code purposes to create a valid security interest in the washing machine.

■ On the other hand, many families in the Central District of California have more than one television or VCR. The court finds

---

16. A secured creditor must also perfect its security interest to protect against rights of third parties. For example, a bankruptcy trustee enjoys the status of a perfected lien creditor, and thus takes priority over the holder of an unperfected security interest. *See, e.g., Babaeian*, 206 B.R. at 540. Generally, a secured creditor must file a financing statement (UCC–1) with the Secretary of State to perfect a security interest in personal property.

Perfection of Sears' security interest in the durable goods is not at issue in this case for two reasons. First, the filing rule has several exceptions, one of which exempts from the filing requirement a purchase money security interest in consumer goods. Cal Com.Code § 9302(1)(d)

(West 1997). Thus it appears that Sears' security interest, if any, is perfected under the statutes. Second, a reaffirmation agreement is between a debtor and the original secured party. Thus it does not raise any issue of rights of third parties that are controlled by the rules relating to perfection.

17. While the charge slips also have a code following the identity of each of these items, neither Sears nor the debtors have provided any meaning for these codes. Because Sears bears the burden of showing that it holds a valid security interest in these items, the court disregards these codes.

that the descriptions in the charge slips for the television and the VCR are insufficient for California Commercial Code purposes to create a security interest in these items.

## B. Withdrawal of Reaffirmation Agreement

■ Sears has filed a paper that purports to withdraw the reaffirmation agreement in this case. The court finds that Sears lacks standing to withdraw the reaffirmation.

### 1. Statutory Requirements for a Valid Reaffirmation Agreement

A valid reaffirmation agreement must be made and filed with the court before the granting of a discharge. Bankruptcy Code § 524(c)(3), 11 U.S.C.A. § 524(c)(3) (West 1994 & Supp.1997). The debtor may rescind the agreement any time up to sixty days after the agreement is filed in court or until the discharge is granted, whichever date is later. *Id.* § 524(c)(4).

If a debtor is not represented by counsel during the course of negotiating the reaffirmation agreement, the court must approve the agreement. *Id.* § 524(c)(6). In making the determination whether to approve the agreement, the court must find that the agreement does not impose an undue hardship on the debtor or a dependent of the debtor, and that the agreement is in the debtor's best interest. *Id.*

For this purpose, the court must hold a hearing, at which the debtor must appear in person, where the court is required to inform the debtor (1) that such an agreement is not required by bankruptcy law, nonbankruptcy law or any reaffirmation agreement, and (2) of the legal effect and consequences of the agreement and of any default thereunder.

*Id.* § 524(d)(1). In addition, at the hearing the court must determine whether the agreement meets the section 524(c)(6) requirements of no undue hardship and the debtor's best interest. *Id.* § 524(d)(2).

■ Case law is uniform in holding that *only* the debtor may seek bankruptcy court approval of a reaffirmation agreement. *McClellan Federal Credit Union v. Parker (In re Parker)*, 193 B.R. 525, 527–528 (9th Cir. BAP 1996); *801 Credit Union v. Heller (In re Heller)*, 123 B.R. 782, 783 (Bankr. S.D.Ohio 1991); *In re Eccleston*, 70 B.R. 210, 213 (Bankr.N.D.N.Y.1986); *In re Farmer*, 13 B.R. 319, 320 (Bankr.M.D.Fla.1981); *In re Newsome*, 3 B.R. 626, 628 (Bankr.W.D.Va. 1980).[18] The major bankruptcy law treatises are in accord. *See* 4 COLLIER ON BANKRUPTCY, ¶ 524.04 (15th ed.1997); 3 NORTON BANKRUPTCY LAW AND PRACTICE, § 48:11 (2d ed.1994).

*Parker,* which is binding precedent on this court,[19] is instructive on this point. The Ninth Circuit Bankruptcy Appellate Panel ("BAP") held that a creditor that is a beneficiary of a reaffirmation agreement (as to both a secured debt and an unsecured debt) has no standing to appeal the bankruptcy court's disapproval of the reaffirmation. The Ninth Circuit BAP found that the creditor had no right to payment of the unsecured debt, because it was otherwise dischargeable. The creditor retained its collateral for the secured debt, the BAP found, and it was not entitled to anything more. The BAP found that the creditor suffered no adverse pecuniary effect from the disapproval of the reaffirmation. The BAP could find this only on the grounds that a creditor has no pecuniary interest in a reaffirmation in the first instance. It follows that a creditor lacks

18. There is language in one opinion that could be interpreted to the contrary. In *Arnhold v. Kyrus,* 851 F.2d 738 (4th Cir.1988), the court stated that a creditor beneficiary of a reaffirmation may bring the reaffirmation to the attention of the court, because this would advance the creditor's interest in having the reaffirmation validated and might bring legitimate pressure on the debtor to honor the reaffirmed debt. *Id.* at 741. However, the court found that the *debtor* must take specific in court action to preserve the claim of a favored creditor. *Id.* at 742. The court further stated that any obligation a debtor feels to pay

the reaffirmed debt must generate from the debtor's personal desire, not from a legal obligation. *Id.* at 741. In *Arnhold* the court reversed a district court finding that the debtor's failure to bring the reaffirmation agreement to the attention of the court at the discharge hearing constituted bad faith that required the denial of a discharge. *Id.* at 741–42.

19. *Coyne v. Westinghouse Credit Corp. (In re Globe Illumination Co.),* 149 B.R. 614, 617–21 (Bankr.C.D.Cal.1993).

standing in the bankruptcy court as well to bring a motion to approve a reaffirmation agreement, or to withdraw such an agreement from court consideration.

Furthermore, Rule 4008 of the Federal Rules of Bankruptcy Procedure authorizes only "[a] motion by a debtor for approval of a reaffirmation agreement...." This procedure is reflected in Official Form No. B 240, the official form for a reaffirmation agreement. Where a debtor is not represented by counsel, the form provides a motion for court approval of such an agreement. The motion must be made and signed by the debtor only: no provision is made for such a motion by a creditor.

Congress was particularly concerned with reaffirmation practice in enacting the Bankruptcy Code. The House Report states:

[U]nsuspecting debtors are led into binding reaffirmations [under the Bankruptcy Act], and the beneficial effects of a bankruptcy discharge are undone. The advantages sophisticated and experienced creditors have over unsophisticated debtors in this area ... still remain [despite amendments enacted in 1970]. The unequal bargaining position of debtors and creditors, and the creditors' superior experience in bankruptcy matters still lead to reaffirmations too frequently. To the extent that reaffirmations are enforceable, the fresh start goal of the bankruptcy laws is impaired.

H.R.Rep. No. 95–595, at 163, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6124. It appears to the court that the creditor misconduct respecting reaffirmation agreements that Congress tried to banish in 1978 [20] has returned.

■ A typical purpose of an allowable *reaffirmation agreement is to permit a debtor to retain collateral that is subject to a valid security agreement. See, e.g.,* COLLIER ON BANKRUPTCY ¶ 524.04 (Lawrence P. King ed., 15th ed.1997).

■ The reaffirmation of a debt subject to a valid, nonavoidable security interest has a tangible benefit for a debtor. Absent reaffirmation, a security interest survives bankruptcy. *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992) (quoting H.R.REP. No. 95–595, at 357 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6313 ("Subsection (d) permits liens to pass through the bankruptcy case unaffected")); *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886). Such a security interest would thus be enforceable by the secured creditor after the case is completed (and the automatic stay terminated). A reaffirmation agreement permits the debtor and the secured creditor to adjust their post-bankruptcy relationship as to this security interest. In contrast, the financial best interest of a debtor ordinarily requires the denial of a reaffirmation of an unsecured debt. 3 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE § 48.11 (2d ed. 1994).

■ Sears has shown no valid security interest in the goods here at issue. Furthermore, the debtors cannot afford the payments that the reaffirmation agreement would require. In consequence, the court cannot make the findings required to approve the reaffirmation agreement in this case.

## 2. Standing to Withdraw Reaffirmation Agreement

■ A debtor has the exclusive right to rescind a reaffirmation agreement. In effect, a reaffirmation is a gift to a creditor, in the form of a contract to pay a debt that otherwise would be discharged in bankruptcy. Whether to make such a gift is a decision belonging solely to the debtor, subject to approval of the court if the debtor is not represented by counsel during the reaffirmation negotiations.

A decision not to proceed with a reaffirmation agreement must belong exclusively to the debtor. The debtor must make the motion to obtain the required court approval. The debtor must decide whether to rescind the agreement.

---

**20.** As evidence of the abuse in reaffirmation agreements, the House Report found that "about ⅓ of all discharged debts to finance companies are reaffirmed...." H.R.Rep. No. 95–595, at 163, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6124.

If a reaffirmation is approved by the court, the creditor has a new binding contract with the debtor that the creditor may enforce in a court of competent jurisdiction. In contrast, if the agreement is not approved by the court, the debt is discharged, and is totally unenforceable thereafter.[21]

The court holds that a creditor has no standing to withdraw a reaffirmation agreement that has been submitted to the court for approval. The debtor has the exclusive right to determine whether to proceed with a request for court approval, and whether to rescind the agreement within the applicable time limit.

## IV. CONCLUSION

The court finds that the charge slips, that Sears has presented as its sole evidence that it has a security interest in the goods that the debtors purchased, are insufficient to create a security interest in the goods under applicable California law. The California Civil Code provisions applicable to consumer credit transactions invalidate such a security interest, where the required disclosures have not been made at all, or have not been made in a timely fashion. Sears has not shown that the required disclosures were made at all. Thus the court must conclude that the Sears debt is unsecured. In addition, only the charge slip for the washing machine meets the California Commercial Code requirement of an adequate description of the collateral.

An unsecured debt may be reaffirmed only under unusual circumstances. Neither the debtors nor Sears has shown any. Thus the reaffirmation agreement must be disapproved.

The court further finds that Sears lacks standing to withdraw the reaffirmation agreement here at issue, because only the debtor has such standing. It is the debtor who is entitled to reaffirm a debt, and the debtor controls whether to give a reaffirmation in the first place, whether to make a motion for its approval, whether to rescind

the reaffirmation, and whether to withdraw a motion for its approval.

---

21. As noted *supra,* a secured creditor would still retain a right to realize on its collateral, after the completion of the bankruptcy case and the termination of the automatic stay.