**In re Donald Allan McLEOD and Jill Therese Mcleod Debtors.**

**Donald Allan McLeod, Plaintiff,**

**v.**

**Sears, Roebuck and Co. Defendant.**

**Bankruptcy No. 98–42467–WS.**
**Adversary No. 98–4826.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Feb. 10, 2000.

Thomas J. Budzynski of Thomas J. Budzynski, P.C., Clinton Township, MI, appeared on behalf of the Debtor.

Michael H.R. Buckles of Buckles & Buckles, P.L.C., Birmingham, MI, appeared on behalf of the defendant.

## OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WALTER SHAPERO, Bankruptcy Judge.

### I. Introduction

This matter is before the Court on Defendant Sears, Roebuck and Co.'s motion for summary judgment as to Donald McLeod's ("Debtor") complaint, which alleges that Defendant violated the automatic stay and the permanent injunction. Debtor's complaint stems from Defendant's commencement of a state court action, post-discharge, to repossess goods in which it claims it holds a perfected purchase money security interest. For the

reasons set forth below, the Court grants Defendant's motion.

## II. Background

Most of the facts in this adversary proceeding are not in dispute and the parties submitted a Stipulation of Facts. Those stipulated facts include that Debtor and his wife filed a joint petition for relief under Chapter 7 on February 9, 1998. Debtors scheduled a debt to Defendant as a general unsecured debt. The Court entered the order of discharge on June 1, 1998, and the case was closed on September 14, 1998. Prior to the case closing, but after the order of discharge had been entered, Defendant sent a demand letter on July 30, 1998, to Debtors' counsel, based on the lien surviving the bankruptcy. There was some ensuing correspondence between the parties, ending with Defendant filing an action for repossession on September 24, 1998 in state court.

The parties further stipulated that Debtor had opened a "revolving charge account" with Defendant on October 19, 1990. Debtor acknowledges that he agreed to and signed the "Sears Card Account and Security Agreement" on behalf of himself and his wife. Debtor added his wife as an authorized buyer on February 6, 1997. The items in dispute were purchased at various times and specifically are (1) a miter saw; (2) a video cassette recorder, television, and compact disc spinner; (3) 25″ and 28″ pullman suitcases; (4) a bracelet, diamond stud earrings, and ring; (5) 14k gold pearl and sapphire earrings, and pearl earrings; and (6) a 9′ outdoor umbrella. These items were purchased between October, 1996 and May, 1997. Either Debtor or his wife signed a separate sales slip for each item. Debtor has regularly received monthly statements for the account from Defendant, including an itemization of all purchases, finances charges, credits, minimum payment due, and balance. Debtor stipulated to the accuracy of these statements.

The account agreement, with updates, is appended to Debtor's brief as Exhibits 2 and 3. The terms include (1) the option to pay in full each month to avoid finance charges; (2) the option to pay in installments; and (3) the method for calculating the minimum monthly payment and finance charges. Of particular relevance to this proceeding are the provisions relating to Defendant's retention of a security interest. First, the agreement provides that the law of the state of the account holder's residence applies to the security interest. (The agreement initially provided that the law of the purchaser's state of residence controlled all matters. This was amended to provide that Arizona law applied to all matters except the security interest.) The paragraph conveying the security interest states that

> I grant [Sears National Bank ("SNB")] a security interest under the Uniform Commercial Code in each item of merchandise purchased from [Defendant] ... to the extent permitted by law, to secure only the purchase price of that item of merchandise. If I do not make payments as agreed, the security interest allows SNB to repossess only the merchandise which has not been paid for in full. I am responsible for any loss or damage to the merchandise until the price is fully paid.

Debtor's Br., Ex. 3B, ¶ 9. The agreement also outlines how payments are to be applied "[f]or the purposes of determining SNB's security interest" as follows:

> [P]ayments received will be deemed to apply first to pay any unpaid insurance, returned payment charges or Finance Charge(s), and then to pay for the purchases on the account in the order in which they were made, and then to pay for any late charges. If more than one item is charged to my account on the same date, my payment will apply first to the lowest priced item(s), or as required by law.

Debtor's Br., Ex. 3B, ¶ 10.

Defendant alleges that the oldest item it seeks to repossess is the miter saw, pur-

chased on October 9, 1996. Defendant generated a report of Debtor's account on July 28, 1998, which showed that the balance owing on September 28, 1996, (prior to Debtor's purchase of the saw), was $1,744.33. *See* Debtor's Br., Ex. 10 at 14. Since that time, Defendant asserts that Debtor paid a total of $647. Applying the payments according to the Account Agreement's "first purchased, first paid" scheme, Defendant concludes that Debtor has not paid in full for the saw, nor for all subsequent purchases.[1] Debtor does not dispute Defendant's assertions as to the status of the account nor that he has failed to pay in full for the items at issue. Instead, Debtor challenges the perfected status of Defendant's security interest. Debtors did not challenge Defendant's secured status or lien during the pendency of the bankruptcy case, nor did Defendant challenge Debtors' characterization of the debt as general unsecured.

### III. Standard for Summary Judgment

Defendant has moved for summary judgment, and the parties have agreed to submit the matter to the Court on the briefs. Fed.R.Civ.P. 56(c) for summary judgment is incorporated into Fed. R. Bankr.P. 7056(c). Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" issue is one where no reasonable fact-finder could return a judgment in favor of the non-moving party. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir.1998) (citing *Anderson*, 447 U.S. at 248, 100 S.Ct. 2124).

### IV. Jurisdiction

In its answer to Debtor's complaint, Defendant asserted that the Court lacked subject matter jurisdiction. Although Defendant appears to have abandoned this argument and neither party addressed it in their briefs, the Court has an "independent obligation" to ascertain whether it has jurisdiction. *See Douglas v. E.G. Baldwin & Associates, Inc.*, 150 F.3d 604, 606–07 (6th Cir.1998) ("The first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case, even where the parties concede or do not raise or address the issue.") (citations omitted).

Debtors received their discharge and their bankruptcy case was closed before Debtor initiated this adversary proceeding. Debtor alleges a post-discharge, post-closing violation of Bankruptcy Code § 524(a)(2)'s permanent injunction.[2] If Debtor is correct and Defendant's security interest is unperfected, then Defendant's lien would not survive the bankruptcy and Defendant's actions would violate the permanent injunction. *See* 3 *Norton Bankruptcy Law and Practice 2d*, § 48:4 (Wil-

---

1. The sales slips are attached to Debtor's Brief as Exhibit 5, and show the following dates and amounts: (1) miter saw purchased October 9, 1996 for $159.42; (2) VCR, television, and compact disc spinner purchased February 22, 1997 for $445.18; (3) pullman suitcases purchased March 16, 1997 for $201.38; (4) bracelet, diamond stud earrings, and ring purchased March 25, 1997 for $285.94; (5) pearl and sapphire earrings, and pearl earrings purchased April 22, 1997 for $259.44; and (6) outdoor umbrella purchased May 1, 1997 for $105.99. Debtor signed the sales slip for the miter saw and Debtor's wife signed for all the other purchases, having become an authorized purchaser on February 6, 1997.

2. Debtor alleged violations of both the automatic stay and the permanent injunction. As Defendant correctly notes, its action (commenced September 24, 1998), does not violate the stay, which ended when the discharge was granted on June 1, 1998. *See* 11 U.S.C. § 362(c)(2).

liam L. Norton, Jr., ed.1997) (explaining that Code § 524(a)(2) bars actions to recover a debt as a *personal liability* of the debtor[,]" but does not bar actions to enforce valid liens). On the other hand, if Defendant's security interest is perfected, then its action for repossession does not run afoul of § 524(a)(2).

Thus, in this case, subject matter jurisdiction is based on an alleged violation of the federal statute. The determination of the status of Defendant's security interest is inextricably bound in the determination of subject matter jurisdiction. Therefore, the jurisdictional question necessarily involves deciding the merits of Debtor's claim, and dismissal for lack of jurisdiction would be inappropriate. *See Odom v. Slavik,* 703 F.2d 212, 216 (6th Cir.1983) (explaining that, when "an issue concerning an element of the offense or cause of action is also an element of jurisdiction[,]" the court must maintain jurisdiction unless the alleged claim " 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such claim is wholly insubstantial or frivolous' ") (quoting *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1945)).

## V. The Validity of Defendant's Security Interest

### A. *Statutory Requirements for Perfection*

"Consumer goods" are defined under the Michigan Uniform Commercial Code as goods "used or bought for use primarily for personal, family or household purposes." Mich. Comp. Laws Ann. § 440.9109(1) (West 1994). Although the parties stipulated to the description of the items at issue, they did not stipulate to the use of those items. The very nature of the items themselves permits an inference they are consumer goods as defined. Defendant has characterized the goods as consumer goods, and Debtor has not challenged this characterization nor presented any facts that would create an issue that their intended use is not as personal, fami-

ly or household items. The Court thus finds that the goods are consumer goods.

■ Attachment of a security interest occurs when (1) "debtor has signed a security agreement which contains a description of the collateral"; (2) "Value has been given"; and (3) "The debtor has rights in the collateral." Mich. Comp. Laws Ann. § 440.9203(1)-(2). " 'Security agreement' means an agreement which creates or provides for a security interest." Mich. Comp. Laws Ann. § 440.9105(1). The description of the collateral is sufficient "if it reasonably identifies what is described." Mich. Comp. Laws Ann. § 440.9110. A security interest holder need not file a financing statement in order to perfect a purchase money security interest in consumer goods. *See* Mich. Comp. Laws Ann. § 440.9302(1)(d) ("A financing statement must be filed to perfect all security interests except ... [a] purchase money security interest in consumer goods ...."). Because filing is not required, a security interest is perfected at attachment. *See* Mich. Comp. Laws Ann. § 440.9303(1). The filing of a financial statement is only required to protect against a subsequent sale to a buyer for value and without knowledge, an exception that is not applicable in this case. *See* Mich. Comp. Laws Ann. § 440.9307(14).

■ As to the first requirement of attachment, the stipulated facts show that Debtor entered into a revolving charge account with Defendant in 1990, received regular updates of the Agreement, and added his wife as an authorized buyer on February 6, 1997. Although Debtors did not sign the SearsCharge Agreement, § 445.862 of the Michigan Retail Installment Sales Act provides that "[a] retail charge agreement shall be considered signed and accepted by the buyer ... if the retail charge account is used by the buyer." Mich. Comp. Laws Ann. § 445.862(a) (Supp.1999). The record further shows that Debtor or his wife signed the sales slips for each purchase at issue. The items for which Debtor's wife signed

were purchased after she became an authorized buyer. The sales slips identified the item(s) purchased, incorporated the SearsCharge Agreement, and granted Defendant a security interest. Debtor challenges the adequacy of the description, stating that the items must be "specifically identified" when there could be "more than one [item] in [the] household." The miter saw is identified as "MITER SAW"; the televison, video cassette recorder and compact disk spinner as "LXITVRACDC, CD SPIN"; the luggage as "25″ UPRIGH, 28″UPRIGHT"; the jewelry as "BRACELET, DIA STUDS, RING" and "14K EARR, P, EARRINGS, P"; and the outdoor "Easy–Lift" umbrella as "9′ E–Z LIFT." *See* Def.'s Ex. 5.

Debtor cites two cases in support of his argument. In the first case, *Straight v. First Interstate Bank of Commerce (In re Straight*), 207 B.R. 217 (10th Cir. BAP 1997), the debtor assigned payments due her from a subcontractor account. *See* 207 B.R. at 220. The definition of collateral in the security agreement included equipment, inventory, and accounts "arising from a disposition of [debtor's] equipment or inventory[,]" but not include accounts receivable. *Id.* at 222–23. The court found that the security agreement did not create a security interest in the subcontractor account because it was not encompassed within the description of the collateral covered by the security agreement. Debtor fails to explain the relevance of this holding to the facts at issue here, and the Court is unable to do so.

Debtor also cites *In re Carlos*, 215 B.R. 52 (Bankr.C.D.Cal.1997). Decided under the California commercial code, the court held that the sufficiency of the description of individual items depended on what it termed "a two-part test," which is really a test in the alternative:

First, if the collateral is such that the debtor may own other similar items (regardless of whether the debtor in fact has more than one), the description must enable a third party to distinguish the collateral from other property. Alternatively, if the debtor is not likely to own more than one such item, a more general description is sufficient.

215 B.R. at 60 (citation omitted). The court went on to apply a "community standard in determining whether a debtor may own other similar items," and found that the description of a washing machine was sufficient because a debtor was only likely to own one, but insufficient for a television or video cassette recorder. *Id.* at 60–61.

Although this case does support Debtor's argument, *Carlos* was decided under California law. Defendant's security interest is governed by Michigan law, and Debtor does not cite nor can the Court find a case adopting this rule and standard in Michigan. To the contrary, the Official Comment to the pertinent Michigan statute rejects strict tests:

The test of sufficiency of a description laid down by this section is that the description do the job assigned to it— that it make possible the identification of the thing described. Under this rule courts should refuse to follow the holdings ... that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called "serial number" test.

Official Comment to Mich. Comp. Laws Ann. § 440.9110. In this case, given the fact that the security interest is a purchase money security interest in consumer goods purchased by Debtors, the "job assigned" to the description is that it be sufficient for Debtors and Defendant to identify the goods at issue. *Carlos* has been criticized for misapplying the description standard for *financing statements*, where third parties dealing with a debtor must be given adequate notice, to a purchase money security interest where no financing statement is required. *See* Steven O. Weise, *U.C.C. Article 9: Personal Property Secured Transactions*, Bus. Law.1935, 1946–47 (Aug.1999). The Court agrees that this third party standard is not appropriate under the facts in this case, and even if it

were, that the descriptions were sufficient to put third parties on notice that "'further inquiry ... will be necessary to disclose the complete state of affairs.'" *Pillsbury Co. v. Herbolsheimer (In re Herbolsheimer )*, 63 B.R. 118, 119 (Bankr. E.D.Mich.1985) (quoting Official Comment to Mich. Comp. Laws Ann. § 440.9402, ¶ 2 (1962)) (explaining the purpose of financing statements).

As to the remaining elements of perfection, the sales slips also stated that the items were "purchased under my Sears-Charge Agreement, incorporated by reference, I grant Sears a security interest in this merchandise until paid, unless prohibited by law." Further, the parties stipulated that Debtors agreed to the terms of the charge account and security agreement, which also expressly stated that Defendant retained a security interest in all items purchased until paid in full. The agreement, taken with the signed sales slips, is sufficient to meet the statutory requirements for a valid grant of a security interest to Defendant. The other requirements of attachment are met because Defendant gave value by providing the items to Debtors, and Debtors took possession of the merchandise. Because the security interest secured the purchase price of consumer goods, the Court concludes that Defendant held a perfected security interest as of the time Debtors purchased the items.

## B. Debtor's Arguments

Debtor raises five other challenges to Defendant's security interest, which the Court finds unavailing. First, Debtor relies on *Oszajca v. Sears, Roebuck & Co. (In re Oszajca )*, 199 B.R. 103 (Bankr.D.Vt. 1996), *rev'd* 207 B.R. 41 (2d Cir. BAP 1997), decided under the Vermont Retail Installment Sales Act. Debtor's reliance on the trial court decision is misplaced because (1) *Oszajca* was decided under Vermont law, not Michigan law; (2) the appellate court reversed the bankruptcy court on the point on which Debtor relies (and

this reversal was omitted from Debtor's pleadings); and (3) the Vermont statute is materially different from the corresponding Michigan statute, specifically relating to the point on which Debtor relies. *Compare* 207 B.R. at 43 & nn. 3–4 (differentiating between definitions under the Vermont statute for retail installment contract, which includes a security agreement, and retail charge agreement, which does not), *with* Mich. Comp. Laws Ann. § 445.851(g)-(h) (Supp.1999) (defining both retail installment contract and retail charge agreements, "whether secured or unsecured").

Second, Debtor alleges that Defendant failed to comply with the Michigan Retail Installment Sales Act, Mich. Comp. Laws Ann. § 445.851–.873. Debtor's analysis depends on his assumption, with no application of facts to the statutory definitions, that the agreement at issue is a retail installment contract and not a retail charge agreement. Debtor then concludes that, under § 445.861(c) of the Act, which outlines a payment allocation formula, Defendant has failed to "provide an allocation formula, or a[sic] least the debtor has not been able to obtain one." Pl.'s Br. at 4. Contrary to Debtor's presumption, the agreement at issue appears to be a retail charge agreement, as it is "an instrument prescribing the terms of a secured or unsecured retail installment transaction that may be made under the instrument from time to time and under the terms of which a time price differential is to be computed in relation to the buyer's unpaid balance from time to time." Mich. Comp. Laws Ann. § 445.852(h) (Supp.1999). Even if the agreement is a retail installment contract, the statutory payment formula mirrors that found in the Sears-Charge Agreement so there is no need to resort to the statutory scheme. Debtor argues that a failure to comply with the payment formula defeats a security interest, but has not alleged any such failure to comply. Indeed, Debtor stipulated to the accuracy of the monthly statements showing application of payments. In addition, Debtor stipulated that he had received the

SearsCharge Agreement, with periodic updates, and agreed to those terms, so the Court is unsure why Debtor has been unable to obtain the terms. The Court concludes that Defendant has not violated the Michigan Retail Installment Sales Act.

Third, Debtor argues that Defendant has violated the Uniform Commercial Code's "transformation rule." This rule applies when the purchase arrangement provides that creditor is to retain a security interest in *all* items purchased no matter whether they are paid in full or not. This means that an item of collateral secures not only *its* purchase, but subsequent purchases also, and thus it is no longer a purchase money security interest. *See In re Shaw*, 209 B.R. 393, 396 (Bankr. N.D.Miss.1996). This rule is inapplicable to the facts in this case, as the Sears-Charge Agreement allocates payments under a first purchased, first paid formula, and the security interest on any particular item is released when that item is paid in full. The sales slips also limit the security interest to the unpaid balance for each item. Thus, no collateral secures anything other than its purchase price, and then only to the extent that a balance remains owing.

Next, Debtor challenges the validity of Defendant's security interest under the Uniform Commercial Code under the "commingling" or "confusion of goods" doctrine. Debtor again fails to apply any facts of the case to the doctrine, and relies on *Basin Electric Power Cooperative v. ANR Western Coal Development Co.*, 105 F.3d 417, 420 (8th Cir.1997), which dealt with a mining company that commingled royalty-bearing and non-royalty coal. Debtor appears to conclude that the prohibited "commingling" arises from the fact that the items "are commingled in an account with other items." Pl.'s Compl. ¶ 12(d). Although not cited by Debtor, the Court finds that § 440.9315 of the Michigan Uniform Commercial Code governs. The statute provides, under certain circumstances, that a perfected security interest in goods continues despite the goods subsequently "becom[ing] a part of a product or mass." Mich. Comp. Laws Ann. § 440.9315(1). Although the words "product" or "mass" are undefined by the statute, the Court cannot, under any reading of these terms, find that items charged to a revolving charge account become "part of a product or mass."

Finally, Debtor alleges in his complaint that "[i]t is believed that certain of the items are gifts that were given to other parties." Pl.'s Compl. ¶ 11. Because of this, Debtor reasons that the security interest is defeated under the "sale or gift . . . to next door neighbor" exception. This argument fails, first because a "belief" alleged in a complaint, with no subsequent explanation or affidavit, does not create a factual issue. In addition, Debtor apparently has misread § 440.9307(14) of the Commercial Code, which provides an exception to the continued perfection of a security interest in consumer goods upon *sale* to a *buyer for value* who "buys *without knowledge* of the security interest." Mich. Comp. Laws Ann. § 440.9307(14) (emphasis added). A donee is not a buyer for value. Debtor also appears to erroneously assume that the "knowledge of the security interest" at issue is a *debtor's* knowledge. From this, Debtor reasons that because the provision granting the security interest was not "properly explained" or "specifically pointed out" to him, that the subsequent alleged gifts defeated the security interest. This is a misinterpretation of the plain language of the statute, which clearly states that the "knowledge" at issue is the buyer's, not the debtor's knowledge.

## VI.  Conclusion

For the above reasons, the Court concludes that Defendant is entitled to judgment as a matter of law that it had a perfected security interest in the goods at issue, that this security interest survived Debtors' bankruptcy as a valid lien on the goods at issue, and thus, Defendant did not violate the permanent injunction.

Accordingly, the motion is GRANTED. Defendant shall submit an order consistent with this opinion.